UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

———————————————————X

Mark Garnes,

    Plaintiff,

v.

Janet Reno, et al., United
States Attorney General;
Kathleen Hawk, Director, United
States Bureau of Prisons; Jake
Mendez, Warden; Michael Zenk,
Warden; (FNU) Holder, Warden;
Mike Nelson, Internal Affairs
Division; Connie Stevens,
Internal Affairs Division;
Vernon (LNU), Internal Affairs
Division; (FNU) Zoda,
Lieutenant; T. Shimkus, Unit
Manager; (FNU) Guyer,
Correctional Officer; W.H.
Lane, Education Supervisor; R.
Enders, Education Technician;
(FNU) Fegley, Inmate Systems
Management; (FNU) (LNU), Inmate
Systems Management,

    Defendants.

———————————————————X

Civil Action No._____
(Please Supply)

**1 : CV00-0700**

RECEIVED SCRANTON
APR 17 2000
PER ___ DEPUTY CLERK

FILED
SCRANTON
APR 18 2000
PER ___ DEPUTY CLERK

**COMPLAINT FILED PURSUANT**
**TO 28 U.S.C. § 1331**

### I. JURISDICITON

This subject matter, per civil action, is pursuant to 28 U.S.C. § 1331, to redress deprivations, mandated by the United States Constitution, respectfully to the rights secured thereunto. The Honorable Court has jurisdiction under 28 U.S.C. § 1331. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### II. PLAINTIFF

Plaintiff, Mark Garnes, pro se, is currently housed in the

1

United States Bureau of Prisons, at FCI Allenwood, to which, plaintiff is currently serving a 25 year sentence. Plaintiff has been housed at FCI Allenwood since January 15th, 1996.

### III. DEFENDANTS

Defendant Janet Reno, is the Attorney General of the United States, in which, the United States Bureau of Prisons is an entity thereunder the Department of Justice. Ms. Reno, is legally responsible for the overall operation of the Bureau of Prisons at each institution under its jurisdiction, including FCI Allenwood.

Defendant Kathleen Hawk, is the Director of the United States Bureau of Prisons. Ms. Hawk, is legally responsible for the overall operation of the United States Bureau of Prisons, including FCI Allenwood.

Defendant Jake Mendez, is the Warden, presently, at USP Allenwood, formerly the Warden of FCI Allenwood, upon the matters herein occurring. Mr. Mendez is legally responsible for the operation of FCI Allenwood and for the welfare of all inmates of said prison.

Defendant Michael Zenk, is the Warden, currently here at FCI Allenwood. Mr. Zenk is legally responsible for the welfare of all inmates of said prison.

Defendant (FNU) Holder, is the Warden, at the Metropolitain Detention Center, hereafter "MDC", located in Brooklyn, New York. Mr. Holder is legally responsible for the welfare of all inmates at said institution.

Defendant Mike Nelson, is an agent of the Internal Affairs Division for the Bureau of Prisons, here mentioned as an agent conducting the investigation for FCI Allenwood.

Defendant Connie Stevens, is an agnet of the Internal Affairs Division for the Bureau of Prisons, here mentioned as an agent assisting in the investigation for FCI Allenwood.

Defendant Vernon (LNU), is an agent of the Internal Affairs Divisions for the Bureau of Prisons, here mentioned as an agent assisting in the investigation for FCI Allenwood.

Defendant (FNU) Zoda, is a former Special Investigation Services Lieutenant for the Bureau of Prisons, here mentioned as Lieutenant at FCI Allenwood.

Defendant T. Shimkus, is a Unit Manager for the Bureau of Prisons, here mentioned as Unit Manager at FCI Allenwood.

Defendant (FNU) Guyer, is a correctional officer for the Bureau of Prisons, here mentioned as correctional officer at FCI Allenwood.

Defendant W.H. Lane, is the Education Supervisor for the Bureau of Prisons, here mentioned as the Education Supervisor at FCI Allenwood.

Defendant R. Enders, is the Education Technician for the Bureau of Prisons, here mentioned as the Education Technician at FCI Allenwood.

Defendant (FNU) Fegley, is the Inmate Systems Management staff officer for the Bureau of Prisons, here mentioned as the "ISM" staff officer at FCI Allenwood.

Defendant (FNU) (LNU), is the Inmate Systems Management Supervisor for the Bureau of Prisons, here mentioned as the "ISM" Supervisor at MDC-Brooklyn.

Each defendant is sued individually and in his or her official capacity. Here, at all times mentioned in this complaint, each defendant's actions are warrant under the United States Constitution.

### IV. FACTS

1. On June 16th, 1998, plaintiff was summoned to the Lieutenant's Office here at FCI Allenwood, from his job assignment, Pre-GED tutor, therein the Education Department.

Upon entering the Lieutenant's Office, SIS Lt. Zoda informed me that I was being placed in the Segregation Housing Unit pending an investigation. I inquired what this investigation entailed, to which, SIS Lt. Zoda implied that I would be notified soon. I was then handcuffed and escorted to the Segregation Housing Unit, hereinafter "SHU", by Correctional Officer Fink, this officer being the Compound Officer during that quarter.

Approximately one or two weeks later, the exact date can be extracted from the "SHU" Staff Visiting Logbook, a correctional officer on duty on this date, advised me that the Lieutenant wanted to see me. In which, I dressed and was handcuffed in the cell and escorted to the conference room therein "SHU." Upon entering the conference room, I was asked to be seated, I declined, preferring to stand.

However, I was then notified, rather informed that the parties in attendance with SIS Lt. Zoda, were Ms. Margaret, SIS Secretary, Mike Nelson, Internal Affairs Division for the

Bureau of Prisons and Connie Stevens(?), Internal Affairs Division for the Bureau of Prisons. SIS Lt. Zoda then performed a preliminary to each participants reason for being there, without specifically detailing my detainment in "SHU." This matter was honored by Mike Nelson, the Internal Affairs Division agent, hereinafter "IAD." Mr. Nelson conducted a brief outline of the allegations, in that, I was being investigated for unauthorized conduct with a female staff member, more precisely, sexual conduct. The interrogatories continued with Mr. Nelson explaining that I was not being the accused, but the victim. Strange as it may seem, why was the victim being detained in confinement (segregation)?

Mr. Nelson went on to inform me that I was not being charged, but would like to know what occurred with the female staff member. To which, it was disclosed that my supervisor for the assigned detail as a tutor, had conducted copulation with me. This female staff member being, Mrs. Marianne McKimpson, to whom I was employed since February 1996 til the date of this matter, June 16, 1998.

The interrogatories continued regarding my working relationship with Mrs. McKimpson. Whether it was a general working relationship; personal at any time, in that disclosure of her personal life incurred via discourse, whether she had touched me in any way that is proscribed; and whether she had induced me to commit an act of copulation? I explained to Mr. Nelson and the attending persons aforementioned, that the allegations were implausible. In that, the person making these

5

accusations was suffering from illusions. Mr. Nelson, expressed that the person had taken a polygraph test and passed as being credible, relative to the accusations. To this, I noted to Mr. Nelson, that a polygraph is not accurate on a high percentage. That I could take a polygraph and pass, placing the matter here in conflict.

The interrogatories continued with reiterations in varied diction. Concluding on this date with Mr. Nelson noting that they, "IAD" and SIS Lt. Zoda would be seeing me again soon.

On or about July 10th, 1998, SIS Lt. Zoda summoned me to the SHU Conference Room, in which, I was advised to sign authorization to have a polygraph test conducted. I declined.

Thereafter, on or about August 4th, 1998, Inmate Frazier, to which, I came to understand was the inmate making the allegations, wrote me two letters while we were both detained in "SHU." These letters have since disappeared from my property (Which was sent home without my permission, to be noted hereafter). Each letter summarized his lies to this matter and reasons for doing such.

On or about August 11th, 1998, Mr. Nelson, IAD, Mr. Vernon (LNU), IAD, SIS Lt. Zoda, and Lt. Gonzalez summoned me to the SHU Conference Room regarding this matter of unauthorized conduct. A brief interrogatory incurred relative to the accusations, in that, Mr. Nelson's endeavors continued, to which, I was to note that the allegations were true, that I was not going to be punished for the matter. I continued to assert that nothing of the sort (allegations) ever occurred. The

6

interrogatory discontinued at this time.

On August 12, 1998 I was writ to court (E.D.N.Y), on August 19, 1999, I returned to FCI Allenwood due to the writ being satisfied. To which, I was detained in "SHU" pending Captain's review. However, the review never occurred, I was notified by Counselor Clark that I was being transferred due to the matter I was detained in "SHU" prior to being writ to court. Such being unauthorized conduct with a staff member.

However, this transfer was never approved or forward to the Northeast Regional Office for the Bureau of Prisons. Some days later, Unit Manager T. Shimkus, notified me that I would be placed back in population. I requested to know why I was being placed back in the general population, considering the pending allegations. Mr. Shimkus implied that the matter was in the air and until another decision can be made, I would be placed in general population.

On October 21, 1999, I was placed back into the general population. Seemingly, to date, the allegations have been proven untrue as made by inmate Eugene Frazier, Register Number 81725-054. Per inclusion, inmate Frazier was a student whom I tutored in the Pre-GED class supervised by Mrs. McKimpson. I tutored inmate Frazier for approximately one year or more, with no problems, confrontations, or anything of the sort. In which, I do not understand why this inmate would make the allegations that he saw me and Mrs. McKimpson engaged in a sexual act.

2.  Upon my release from "SHU", I reqeusted to be reinstated in the Education Department as my assigned detail. I noted to

7

Mr. Lane, the Education Supervisor, I prefer to work in the Leisure Library, Law Library, or as an Orderly. Mr. Lane stated that he wanted to speak with Mrs. McKimpson on the matter of rehiring before making a decision. This occurring on October 22nd, 1999.

On October 26th, 1999, I spoke with Mr. Lane again, in which, he noted that in speaking with Mrs. McKimpson, she did not have a problem with me working in the Education Department.

However, on October 27th, 1999, I was on the Change Sheet (job assignments are posted daily when switched from one assigned detail to the next, to inform those inmates of the job change accordingly) assigned to work with the Construction and Mechanical Services. I remained on this detail until October 30th, 1999, to which, I was placed to work with the Recreation Department, to date, I remain.

On or about November 14th, 1999, I further requested of Mr. Lane to place me in the Education Department. Mr. Lane stated that he was over his qutoa, as soon as the numbers depleted he would rehire me. However, there have been a few inmates hired since this time, mainly of European descent.

I have continuously requested from Mr. Lane to be assigned on his detail, with subtle declines each time.

On or about December 20th, 1999, an inmate working the Law Library of the Education Department, as a clerk, was transferred. I requested from Mr. Enders this opening. Mr. Enders stated he would honor my request. However, I was then told by Mr. Enders, that I should speak with Mr. Lane upon his return. I did such. I was continued to be

set adrift by Mr. Lane, in that, it was seemingly obvious that he had no intentions of rehiring me therein the Education Department. I request of Mr. Enders to know why I am being denied to work in the Education Department, to which, I have incurred no problems prior to the allegations. In that, I had worked for practically each staff member therein the Department, (Mrs. Socash, Parenting and Videoing; Mr. Enders, Leisure Library; Mr. Keller, Law Library; Mr. Hile, occasional work; as well Mr. Lane, on an as needed basis respected to the Black History Month Agenda and other activities sponsored by the Education Department) voluntarily, as well with pay. My works have been exemplified in written commendations, certificates, and work performance sheets (Monthly evaluations of inmate work habits, attitude, and performance).

Seemingly, the discrimination indicated here is due to the allegations aforementioned in **Section 1.**

3. On August 11th, 1998, I was summoned to R & D (Receiving and Discharge) to pack up my personal and legal property, due to my being notified that I am being writ to court (E.D.N.Y.). I was taken to R & D by Correctional Officer Hill, from "SHU".

Upon itemizing my property, I advised the Inmate Systems Management Officer, hereafter "ISM", Mr. Fegley, that I was going to need my legal property, due to my case being reopened. Mr. Fegley stated, that would not be a problem.

However, on August 12th, 1999, I was called to R & D to be placed on the transport bus to Brooklyn, New York, in which, I was to be housed at MDC-Brooklyn while on writ. I asked the

attending "ISM" Officer, Mr. Davenport, had my legal property been placed on the transport bus with me?  He was unsure.

Upon being received at MDC-Brooklyn, the transport bus officers noted to me, that the only property here belonged to inmates named.  My legal property had not accompanied me as I requested upon Mr. Fegley.

On or about August 26th, 1998, I was summoned to the R & D, there at MDC-Brooklyn.  To which, an "ISM" officer stated to me that my property was here, only I could not have the personal property.  I stated to the "ISM" officer, that the most important portions of the property was my legal papers.  The officer dispersed the only legal folder therein my property.  I explained that there was more legal papers, the officer stated that was all there was, indicating the box was empty.

Soon after, I spoke with Unit Manager A. Baggott, there at MDC-Brooklyn regarding the remaining legal papers and its importance to my pending case.  Mr. Baggot called FCI Allenwood and spoke with Mr. Fegley, there in front of me.  To which, Mr. Baggot advised me, that the remaining property would be forward.

The property was forwarded, on a number of occasions.  With each instance, the property was mailed back to FCI Allenwood.  That is, from what I was told by Counselor Barnes, Counselor Wood, and Unit 4 Secretary, V. Evans.  Eventually, Mr. Baggott called back to "ISM" Mr. Fegley.  To which, Mr. Fegley stated that MDC-Brooklyn had mailed the property back.  Mr. Baggott stated to Mr. Fegley, to address the package in his name, to insure its arrival and that he is to be contacted upon such.

However, at some point between the property being shifted from one institution to the next, Counselor Jesse Barnes had called FCI Allenwood, spoke with Mr. Fegley, who stated that contraband was found in my property. Should such be the case, I did not receive an infraction for such contraband. Seemingly this was another ruse to discourage me from requesting for my property.

Furthermore, contraband in my property would have been detected when the Unit 3B Officer packed my property on June 16th, 1998, when I was detained in the Segregation Unit. Next, Correctional Officer Hill, the "SHU" Property Officer would have detected contraband in my property when he itemized my property in "SHU".

The matter here was obviously settled by FCI Allenwood's "ISM" or MDC-Brooklyn's "ISM", to which, my property was mailed home to my oldest son. The only time I had given my son's address to mail property home was to Mr. Fegley at FCI Allenwood. On the 11th day of August 1998, when I was packed out for the writ. The property was sent home without my permission, at the discretion from one of the above noted.

In sending my property home, I was hindered, if not, handicapped from continuing my litigation in the courts. In that, I am a pro se litigant, to which, my case was overturned as a result of my personal litigation.

However, I received a time deduction per writ, I was unable to fully execute my appeal with all issues included due to my legal papers being unfound by my son, therein the property that was mailed to him. In that, I am litigating in other

11

courts.

My appeal, pertaining to the pro se 28 U.S.C. § 2255, was sent to the United States Court of Appeals for the Second Circuit, on January 31st, 2000. Due to my legal property not being available to me, I was unable to file a complete appeal. That is, with all issues inclusive from my 28 U.S.C. § 2255 that the district court rendered disfavorable.

On December 27, 1999, I filed a complaint with Counselor Hursh, per request with an attached version of the issue. The issue regarding Correctional Officer (FNU) Guyer, who was the Unit 3B officer on the 8:00 a.m. to 4:00 p.m. shift, threatening to deny me a pass for the Law Library, in which, I noted to the Officer Guyer, that I am litigating in the courts and I am entitled to a pass.

However, on or about January 14th, 2000, a Friday Evening, Mr. Shimkus, Unit Manager for Unit 3B, called me into his office. In which, he discussed the entitlements of Officer Guyer's duty to refuse me a pass, that I did not have a right to a pass, if the officer wanted to deny me the pass, he could. I explained to Mr. Shimkus that I am litigating in the courts as a pro se litigant, I have a deadline for February 3rd, 2000, as the exhibit to my complaint magnifies. Mr. Shimkus decline to reason with the apparent logic to my right to the pass, entitling me appropiate access to the courts. The discourse here concluded with my requesting that the Informal Resolution continue accordingly, in that, the next step be taken with my obtaining a BP-229.

On February 25th, 2000, I submitted a request form with an additional version of the matter from December 27th, 1999, with a complaint regarding Mr. Shimkus interference with my filing a complaint pursuant to the Administrative Remedy Process. I placed the manilla envelope on Mr. Moser's desk, the Unit 3B Counselor, in which, Mr. Moser was on training that week, and came into the Unit to do a sanitary inspection, informing that he would take care of the matter when he returned.

On or about March 7th, Counselor Moser returned one of the two Informal Requests submitted, this an unrelated issue. I requested to know was the other Informal Resolution being processed, Mr. Moser stated he gave it to Mr. Shimkus. At this time, Mr. Shimkus was at training.

However, on March 20th, 2000, I spoke with Mr. Shimkus outside of Unit 3 regarding the matter of the Informal Resolutions being submitted, one pertaining to the matter of the issue from December 27th, 1999, the other regarding his interference with my filing greivances. Mr. Shimkus stated he never received it.

The behavior here of Mr. Shimkus interfering with my filing greivances pertaining to an officer's endeavors to deny me access to the law library, is a deliberate act of complicity to conceal the facts of the issue. In which, Mr. Shimkus' aids the hinderance of this matter. Mr. Shimkus' complicity to adhere to unethical practices in denying me access to the courts are violative.

Furthermore, it seems that the validity of this matter was recognized as severe, in that, Officer Guyer began to give me a pass thereafter with no interference, as well, including the

correct time implemented. Whereas, prior to, Officer Guyer would include the time as 12:00 p.m., to which, would place me out of bounds en route to the law library, considering the 10 minute move (time allotted for inmates to move from one designation to the next), would be completed. However, the general work-call move is announced at approximately 11:40 a.m. and lasting for about 10 minutes, in which, the move would be complete at approximately 11:50 a.m. Seemingly, Officer Guyer's actions would subject me to an infraction, sanctioning me to "SHU" for being out of bounds. The option to this matter being Officer Guyer taking the paas back, due to the time being void with the move being completed, disallowing me to move. To which, I would have to wait for the next 10 minute move.

This matter was a further endeavor to impinge upon my access to the courts.

In conclusion, it is proscribed that the United States Bureau of Prisons not falsely detain an inmate in "SHU" under false intent without procedural due process; discriminate against an inmate by depriving in an assigned duty without just cause; and denying an inmate access to the courts. Here the policy and practices are violative and conducive for civil action per breach of constitutional rights guaranteed plaintiff hereto.

### V. LEGAL CLAIMS

Plaintiff has been deprived of this right to due process,

pursuant to the Fifth Amendment of the UNited States Constitution, for false imprisonment, in that, plaintiff was illegally detained in the Segregation Housing Unit on false allegations, disproven by the Internal Affairs Division for the United States Bureau of Prisons and/or FCI Allenwood's SIS Lt. Zoda and Warden Jake Mendez.

Plaintiff was further deprived of his rights of due process without just cause and equal protection guaranteed by the Fifth Amendment of the United States Constitution, in that, plaintiff was deprived of his assigned detail prior to being detained in the Segregation Housing Unit and upon returning on writ thereafter being released from the Segregation Housing Unit. To which, the Supervisor of Education and the Education Technician arbitrarily and capriciously discriminated against plaintiff in denying him to be rehired.

Plaintiff was deprived of his rights to access to the courts as guaranteed by the Fifth Amendment of the United States Constitution. In that, plaintiff's property, significantly his legal property was mailed home without his permission, depriving him to continue his litigation adequately and replete with all issues relative to his 28 U.S.C. § 2255 and civil matters, these rights being deprived by the "ISM" staff at FCI Allenwood and MDC-Brooklyn, herein mentioned, with accompanied endeavors by Correctional Officer (FNU) Guyer and Unit Manager T. Shimkus at FCI Allenwood.

The plaintiff has no plain, adequate or complete remedy at law to redress the injustices delineated herein. Plaintiff

has been and will continue to be irreparably injured by the conduct of the defendants herein, unless the Honorable Court grants the declaratory, injunctive, compensatory, and punitive relief and damages respectfully which plaintiff seeks.

**WHEREFORE,** plaintiff respectfully prays that the Honorable Court enter judgement granting plaintiff:

A declaratory judgment and permanent injunction which:

a.   Require the investigative procedural process to be revised when allegations by other inmate(s) subject an inmate(s) to detainment in the Segregation Housing Unit on false allegations.

b.   Prohibit defendants, herein noted in total, their agents, employees, successors interest and all other persons in active concert or participation with them, from harassing threatening, punishing or retaliating in any way against the plaintiff because he has filed this action, or from transferring plaintiff to any other institution, without his express consent, during this pending action and thereafter in retaliation.

c.   Require defendants herein noted encaptioned, to turn-over any and all materials relative to the investigation therein **facts (1)**; that the appropiate procedural process is to be taken in returning plaintiff's property from home, subjecting said property to any and all security scrutiny to ascertain clearance; that the appropiate procedural process be published and adhered by administrative staff when subject with sending an inmates property home without his expressed consent.

d.   Require that inmates of various race are not declined

the detailed assignment in the Education Department, due to any presumptions that the inmate poses a detriment without a security check (background assessment).

e. Require defendants herein noted, specifically, Defendant Janet Reno, Attorney General for the United States, and Kathleen Hawk, Director of the Bureau of Prisons for the United States, to permit plaintiff to engage in communication necessary to procure affidavits related to the conduct of this complaint; including the preparation of the furtherance of this complaint for litigation; in that, plaintiff is permitted the facilities of the law library and the asistance of the Education Department where he may be housed at the time of such litigation being prepared, and to conduct any and all other matters consistent with the matter herewith that conforms to prison security, which is reasonably and directly connected with the comprisement of this complaint.

Compensatory damages in the amount of $150.00 for each day detained in the Segregation Housing Unit, (the dates are not exact, that is, in being June 16th, 1998, specifically, the date can be confirmed by the Segregation Detainment Order filed) from June 16th, 1998 til August 12th, 1998, then from August 19th, 1999 til October 21st, 1999, from each of the following defendants: Janet Reno; Kathleen Hawk; Warden Jake Mendez; (former Lieutenant) (FNU) Zoda; Mike Nelson; Connie Stevens; and Vernon (LNU).

Compensatory damages in the amount of $90.00 for each month deprived of my reinstatement to the assigned detail therein the Education Department, from the month of October 1999 til the

date/month the Honorable Court deems just and proper, respectfully due to plaintiff being transferred from FCI Allenwood soon after the filing of the withheld

Compensatory damages in the amount of the cost of the personal property sent home without plaintiff s permission, compensatory damages in the amount for the cost required to procure the documents from the Honorable Courts, (E.D.N.Y.; Supreme Court for the State of New York, New York County; and Central District of California); compensatory damages in the amount of $10,000.00 to plaintiff from each of the defendants liable for the legal documents precluding plaintiffs access to the courts, each defendant as follows: Janet Reno; Kathleen Hawk; Warden Jake Mendez; Warden (FNU) Holder; (FNU) Fegley; (FNU) (LNU) Inmate Systems Management Supervisor there at MDC-Brooklyn; and compensatory damages in the amount of $2,500.00 to each defendant as follows: T. Shimkus and (FNU) Guyer. Plaintiff respectfully request that the amounts noted hereto for compensatory damages be paid to plaintiff accordingly.

Punitive damages of $10,000.00 to plaintiff from each defendant named therein the caption in their individually and of their official capacity.

Trial by jury on all issues triable by jury.

Plaintiff's cost for this complaint and litigation accompanied herewith now and forthcoming.

Such other and further relief as the Honorable Court deem just, proper, and equitable.

Respectfully submitted,

Mark A. Garnes - Pro Se
Reg. No. 24646-053
P.O. Box 2000-3B
FCI Allenwood Med.
White Deer, Pa.    17887

**DATED: March 31st, 2000**
**White Deer, Pennsylvania**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
————————————————————X
Mark Garnes,                           :
       Plaintiff,                 :
                                   :   CERTIFICATE OF SERVICE
      v.                          :   Civil Action No._____
                                   :        (Please Supply)
Janet Reno, et al., United             :
States Attorney General;
Kathleen Hawk, Director, United        :
States Bureau of Prisons; Jake         :
Mendez, Warden; Michael Zenk,
Warden; (FNU) Holder, Warden;          :
Mike Nelson, Internal Affairs          :
Division; Connie Stevens,
Internal Affairs Division;             :
Vernon (LNU), Internal Affairs         :
Division; (FNU) Zoda,
Lieutenant; T. Shimkus, Unit           :
Manager; (FNU) Guyer,
Correctional Officer; W.H.             :
Lane, Education Supervisor; R.
Enders, Education Technician;          :
(FNU) Fegley, Inmate Systems
Management; (FNU) (LNU), Inmate        :
Systems Management,                    :
       Defendants.                :
————————————————————X

    I, Mark Garnes, plaintiff, pro se, hereby certify under the penalty of perjury that on April 10th, 2000, I served by United States Mail, certified, the original and 18 copies of the Complaint pursuant to 28 U.S.C. § 1331, to the Clerk of the Court, United States District Court, Middle District of Pennsylvania, 235 Washington Avenue, P.O. Box 1146, Scranton, Pennsylvania 18501.

**DATED: April 10th, 2000**

                                          Mark A. Garnes - Pro Se
                                          Reg. No. 24646-053
                                          P.O. Box 2000-3B
                                          FCI Allenwood Med.
                                          White Deer, Pa.   17887