ORIGINAL

MCC:KLM:slg:2001V00253

FILED
HARRISBURG, PA

MAY 29 2001

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MARK GARNES,
      Plaintiff

v.                                          Civil No. 1:CV-00-0700
                                            (Caldwell, J.)
JANET RENO, et al.,[1]
      Defendants

BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGEMENT

I. Statement of the Case

On April 18, 2000, Mark Garnes, an inmate formerly incarcerated at the Federal Correctional Institution ("FCI") Allenwood, White Deer, Pennsylvania, filed a Bivens complaint alleging that his right to access the courts has been violated. Garnes filed his complaint against Inmate Systems Officer Charles Fegley claiming that Fegley failed to send Garnes' legal materials to Metropolitan Detention Center ("MDC") Brooklyn, New York, while he was there on writ, and as a result, he was unable to file a complete appeal to his §2255 motion.

---

[1] By Order dated February 15, 2001, the Court dismissed three of Garnes' claims for failure to state a claim upon which relief may be granted and dismissed fourteen Bureau of Prisons defendants. The Court allowed the remaining claim against defendant Fegley to proceed.

On May 29, 2001, the defendant filed a motion for summary judgment. This brief is filed in support of that motion. Defendant Fegley seeks summary judgment because the material undisputed facts establish that Fegley did not interfere with Garnes' right to access the courts; nor has Garnes demonstrated an actual injury to support an access to courts claim.

## II. Statement of Facts

The plaintiff, Mark Garnes, arrived at FCI Allenwood on January 31, 1996. (R. 6.)[2]  Garnes is currently incarcerated at the Federal Correctional Institution ("FCI") Fort Dix, New Jersey. (R. 4.)

On August 12, 1998, Garnes was sent on federal writ to the MDC Brooklyn. (R. 6.) In accordance with established Bureau of Prisons ("BOP") policy, when an inmate is on temporary leave, i.e., sent on a writ to a facility other than that to which he is designated, the inmate does not take all of his personal property with him. (R. 10, ¶6; R. 20; R. 22.) Nevertheless, an inmate on temporary leave for court proceedings is permitted to retain essential legal materials. (R. 22.)

Therefore, on August 11, 1998, the day prior to Garnes' scheduled departure on writ to MDC Brooklyn, Garnes reported to receiving and discharge in order to pack his property. (R. 9, ¶5.)

---

[2] "R. ___" refers to Defendant's Record to Brief in Support of Defendant's Motion for Summary Judgment.

2

At this time, Fegley conducted an inventory of Garnes' property in his presence. (R. 9, ¶6; R. 24.) As Fegley inventoried each item, he recorded the item on the Bureau of Prisons Form BP-383, entitled "Inmate Personal Property Record." (hereinafter "inventory form") With the exception of two items (five soft cover reading books and two photo albums), all of Garnes' items were marked for "storage" as indicated by the "S" next to the item. (R. 10, ¶6; R. 24.)

Even though Garnes was allowed to bring "essential legal materials" with him on writ, Garnes elected to have this property stored. This was indicated by marking "S" for "stored" on the inventory form. (R. 10, ¶7; R. 24.) Garnes verified the accuracy of this action by signing the inventory form. (R. 10, ¶7; R. 24.)

As indicated on the inventory form, most of Garnes' property was stored at FCI Allenwood with the exception of five books and two photo albums that were to be mailed to "T. Williams at 1139 Clay Ave. #21, Bronx, 10456." (R. 24.) Garnes signed the inventory form on August 11, 1998 at 10:15 a.m. indicating that he agreed with the disposition of his property. (R. 10, ¶7; R. 24.)

Thus, on August 11, 1998, Garnes knew he was going to Brooklyn on writ to argue his §2255 motion yet he left his legal material at FCI Allenwood for storage until his return. Contrary to Garnes' assertions, Fegley did not refuse to allow Garnes to take his legal materials with him. If Garnes had requested to bring his legal materials with him, Fegley would have separated

3

those materials from the remainder of his property, completed a manifest for the staff members from the bus crew to sign (to document they received the material), and he would have placed a copy of the manifest in Garnes' file. (R. 11, ¶8.) Since Garnes signed the form stating that the property (including his legal materials) was to be stored, Fegley packed the property and it was placed in storage (except for the items that Garnes had indicated should be mailed to an address he had provided). Garnes was then given a copy of the inventory form for his records. (R. 11, ¶9.)

On August 26, 1998, Garnes' Unit Manager at MDC Brooklyn telephoned Fegley and asked that he mail Garnes' legal materials to MDC Brooklyn. Out of an abundance of caution, Fegley mailed **all** of Garnes' property to MDC Brooklyn. Before mailing the property, Defendant Fegley modified the notations on the inventory form from "S" for "storage" to "M" for "mailed." In section 8 of the inventory form Mr. Fegley wrote, "8/26/94 All property mailed to MDC Brooklyn Per Request."[3] (R. 11, ¶10; R. 26.)

On August 27, 1998 Garnes' property was mailed to MDC Brooklyn. (R. 12, ¶11; R. 28.) The United Parcel Service ("UPS") shipping record clearly indicates that three boxes were shipped to

---

[3] The year written by Fegley was an error. For some unknown reason, Fegley wrote "94" rather than "98."

4

MDC Brooklyn with the reference of "Garnes" and Garnes' federal register number. (R. 12, ¶12; R. 28.[4])

On September 3, 1998, MDC Brooklyn received all of Garnes' personal property that was shipped from FCI Allenwood. (R. 30.) The inmate personal property record indicates that Garnes was permitted to keep his legal materials with him, as evidenced by the notation "K" for "keep in possession" next to the words "legal materials." As noted in block 7(e) of the inventory form, a MDC Brooklyn staff member noted "Rest of property returned back to institution (ALM). Inmate here on writ." (R. 30.) The remaining property was mailed back to FCI Allenwood via UPS. (R. 30, block 7(e)).

Garnes signed the inventory form which reads, "I have today reviewed the property returned to me." (R. 30, block 10.) In addition, block 10 reads in part, "The inmate by signing below certifies the accuracy of the inventory, except as noted on the form, relinquishing of all claim to articles listed as donated, receipt of all allowable items, and receipt of a copy of the inventory. When the inmate claims a discrepancy in the inventory, the receiving officer shall attempt to resolve that discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under Comments." (R. 30.)

---

[4] The name and register number of another inmate has been redacted.

5

The inventory form indicates that Garnes received **18 inches** of legal materials and that the remainder of his property would be shipped back to his designated institution, FCI Allenwood. (R. 30.) Thus, Garnes did receive his legal materials at MDC Brooklyn, and the remainder of his property was mailed back to FCI Allenwood per BOP policy. The inventory form does not indicate what the legal materials consisted of that Garnes received; nevertheless, it is clear that Garnes did receive his legal materials and consented to the rest of his belongings being shipped back to FCI Allenwood. (R. 30.)

Thereafter, in mid-October 1998, Fegley was again contacted by staff at MDC Brooklyn who asked that Garnes' property be sent back to MDC Brooklyn. Fegley does not recall personally re-mailing Garnes' property to MDC Brooklyn staff nor does he recall handling Garnes' property at all after mailing it to MDC Brooklyn in August of 1998. (R. 12-13, ¶14.)

Records indicate that on two occasions Garnes requested that portions of his legal material be mailed to a personal residence. A "Request- Authorization to Mail Inmate Package" dated March 3, 1999 indicates that Garnes requested to have his legal materials mailed from MDC Brooklyn to Mr. Tyrone L. Williams in the Bronx, New York. (R. 32.) Garnes signed this request and dated it March 3, 1999. (R. 32.) This form does not detail what documents were mailed home, it simply refers to "legal material." (R. 30.)

6

A second "Request- Authorization to Mail Inmate Package" dated June 17, 1999 indicates that Garnes again requested to have some of his legal materials mailed out of MDC Brooklyn to a personal residence. This form indicates that on June 17, 1999 Garnes requested to have his "books, **legal material**, photos, personal papers, mail" (emphasis added) shipped to Mr. Tyrone L. Williams in the Bronx, New York. (R. 34.) On August 19, 1999, Garnes returned to FCI Allenwood. (R. 6.)

### III.  Question Presented

Should defendant Fegley be granted summary judgment to Garnes' right to access the court claim as there exists no genuine issues of material fact?

Suggested answer in the affirmative.

## IV.  Argument

**SUMMARY JUDGEMENT MAY BE GRANTED IN FAVOR OF DEFENDANT FEGLEY[5] AS THERE ARE NO GENUINE ISSUES OF MATERIAL FACT.**

A.  <u>The Legal Standards Governing Summary Judgment.</u>

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriately entered when the moving party demonstrates, by affidavit or otherwise, that there are no genuine issues of any material fact to be resolved. <u>See</u> <u>Peterson v. Lehigh Valley District Counsel</u>, 676 F.2d 81, 84 (3d Cir. 1982); <u>Continental Insurance v. Bodie</u>, 682 F.2d 436, 438 (3d Cir. 1982).

Rule 56(c) "mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The Court also stated in

---

[5] In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court implied a cause of action for damages against federal employees for the violation of constitutional rights. The same immunities that are granted to state officials in §1983 civil rights actions applies to federal employees. <u>Butz v. Economou</u>, 438 U.S. 478, 496-505 (1978). Likewise, sovereign immunity equally applies in <u>Bivens</u> actions. Thus, plaintiffs cannot bring <u>Bivens</u> actions against the United States, federal agencies, or federal employees sued in their official capacities. <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994); <u>Chinchello v. Fenton</u>, 805 F.2d 126, 130 n.4 (3rd Cir. 1986); <u>Laswell v. Brown</u>, 683 F.2d 261, 267-68 (8th Cir. 1982); <u>See</u> <u>also</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985)(suit against officer in official capacity is the same as a suit against the sovereign). Applying these principles here, to the extent Garnes has sued Fegley in his official capacity, that claim should be dismissed as barred by sovereign immunity.

8

Celotex that the party moving for summary judgment need not, as a matter of course, support its motion with affidavits. The Court reasoned that "the impact of these subsections [Fed.R.Civ.P. 56 (a)-(e)] is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may and should be granted <u>so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment</u>, as set forth in Rule 56(c) <u>is satisfied</u>." 477 U.S. at 323 (emphasis added).

**B.   Fegley Should be Granted Summary Judgment Because the Undisputed Material Facts Establish that Fegley Did Not Interfere With Garnes' Access to the Courts.**

In <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), the Supreme Court recognized that prisoners have a first amendment right of access to the courts. Based on <u>Bounds</u>, various courts, including the Third Circuit, held that inmates could raise access to courts claims even if the alleged violation had not caused them any actual harm. <u>See, e.g.</u>, <u>Bieregu v. Reno</u>, 59 F.3d 1445 (3rd Cir. 1995); <u>Valentine v. Beyer</u>, 850 F.2d 951 (3rd Cir. 1988).

In <u>Lewis v. Casey</u>, 518 U.S. 343 (1996), however, the Supreme Court clarified the parameters of the right of access to the courts. The Supreme Court held that the constitutional right of access to the courts did <u>not</u> create an abstract, free-standing right for inmates to have law libraries or legal assistance. <u>Id</u>. at 351. Disavowing prior statements that indicated that inmates

9

had the right to bring grievances and litigate effectively in court, id. at 354, the Court held that "Bounds [did] not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." Id. at 355.

Rather, the Court held, the right of access to the courts required only that prisons provide inmates with the tools that they needed to attack their sentences, directly or collaterally, and to challenge the conditions of their confinement. 518 U.S. at 355. The Court further observed that "[i]mpairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration. Id. (emphasis in original).

The Court also reaffirmed the legal requirement that in order to prevail on a constitutional challenge to access to the courts, a plaintiff must show that he suffered an actual injury as a result of the alleged violations. Id. at 349-53. This "actual injury" requires an inmate to establish that the alleged shortcomings of the prison library or assistance program, or other purported violation of the inmate's right of access to the courts, hindered his ability to pursue a legal claim. At that, the Court's holding regarding hindrance to legal claims is limited to "**nonfrivolous** legal claim[s]." Id. at 353 (emphasis added); id. at 353 n.3 (recognizing that "[d]epriving someone of a frivolous claim

10

... deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").

In sum, a court may not presume harm from the interference with an inmate's right of access to the courts; rather, to state a cognizable access to courts claim, a showing of actual injury is required. See Oliver v. Fauver, 118 F.3d 175, 177-78 (3rd Cir. 1997). See also Tourscher v. McCullough, 184 F.3d 236, 242 (3rd Cir. 1999)(failure of inmate to allege any facts that the number of hours he was required to work denied him sufficient time to prepare an appeal as to his conviction failed to state a viable claim of the denial of access to the courts); Martin v. Davies, 917 F.2d 336, 343 (7th Cir. 1990)(allegation of insufficient library time failed to state constitutional claim because the plaintiff failed to allege any facts that he missed deadlines and lost a case he could have won or to establish why he plead guilty to a crime he did not commit). See generally Reynolds v. Wagner, 128 F.3d 166, 182-83 (3rd Cir. 1997)(recognizing that there is no first amendment right to subsidized mail or photocopying, with Lewis requiring that an inmate making an access to courts claim demonstrate a direct injury). Moreover, the "actual injury" must involve a nonfrivolous legal claim concerning only challenges to the inmate's conviction or his conditions of confinement. Lewis, supra.

11

In this case, it is clear from Fegley's declaration (R. 8-16.) and the detailed statement of facts, see text supra at 2-7, that Fegley did nothing to impede Garnes' right to access the court, nor has Garnes shown an actual injury. As indicated above, when Garnes was sent on a federal writ from FCI Allenwood he had the opportunity to have his legal materials sent with him. Instead, Garnes chose to store his legal materials along with his personal property at FCI Allenwood as evidenced by his signature on the August 11, 1998 inmate personal property form. (R. 24.)

Later, upon receiving requests from Garnes' Unit Manager at MDC Brooklyn to mail Garnes' legal materials, Fegley mailed all of Garnes' property to MDC Brooklyn. Garnes then chose to retain 18 inches of legal materials. Thus, at all times, Fegley complied with BOP policy and did not violate Garnes' constitutional rights.

Furthermore, Garnes has not established that he suffered an actual injury and that his case was nonfrivolous. Garnes asserts that he was unable to file a complete appeal to his §2255 motion. Yet, in his complaint Garnes fails to allege any specific facts to support his allegations; i.e., what legal papers were missing and how those materials would have affected the outcome of his court case.

Moreover, on or about January 31, and April 12, 2000, respectively, Garnes filed his brief and appendix and a reply brief to the Second Circuit Court of Appeals as to his §2255 appeal. In

neither of these briefs did Garnes allege being denied access to his legal materials. Nor did Garnes reference an inability to adequately present his claims due to missing legal materials. (R. 35-58; 112-130.)

Additionally, a review of the government's brief filed in regard to Garnes' §2255 appeal and of the June 29, 2000 summary order of the Second Circuit affirming the denial of Garnes' §2255 motion establishes that Garnes' §2255 motion had no merit. (R. 59-111; 184-188.) As such, Garnes has failed to establish a claim of access to the courts and defendant Fegley is entitled to summary judgment.

### V. Conclusion

For the reasons stated above, summary judgment should be granted in favor of defendant Fegley with a certification that any appeal is deemed frivolous, lacking in probable cause, and not taken in good faith.

Respectfully submitted,

MARTIN C. CARLSON
United States Attorney

KATE L. MERSHIMER
Assistant U.S. Attorney
SHELLEY L. GRANT
Paralegal Specialist
217 Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108
717/221-4482

Dated: May 29, 2001

13

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MARK GARNES, :
        Plaintiff :
 :
    v. : Civil No. 1:CV-00-0700
 : (Caldwell, J.)
JANET RENO, et al., :
        Defendants :

CERTIFICATE OF SERVICE BY MAIL

    The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

    That on May 29, 2001, she served a copy of the attached

**BRIEF IN SUPPORT OF THE DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Addressee:

Mark Garnes
Reg. No. 24646-053
FCI Ft. Dix West
P.O. Box 7000
Unit 5811
Ft. Dix, N.J. 08640

                                            _/s/ Shelley L. Grant_
                                            SHELLEY L. GRANT
                                            Paralegal Specialist