# ORIGINAL

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

(23)
6/15/01
vfy

Mark Garnes,                    :

      Plaintiff,              :

                         :

     v.                       :          Docket No.: 00-CV-0700-1(WWC)

                         :

Janet Reno, et al.,            :

      Defendants.              :

....................................................

**FILED**
**HARRISBURG**

JUN 1 4 2001

MARY E. D'ANDREA, CLERK
Per_____
     DEPUTY CLERK

## PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT

**COMES NOW**, Mark Garnes, Plaintiff, hereby respectfully moves the Honorable Court to adjudicate the summary judgment favorable to Plainitiff pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

Defendant Fegley, contends therein his Motion for Summary Judgment and Statement of Material Facts, with Brief in Support of Defendant's, in short, that Plaintiff's right to access to the courts were not violated.  To which Defendant withheld legal materials/documents pertinent to Plaintiff's 28 U.S.C. § 2255 proceedings, appeal therefrom, and preparation to each.  Plaintiff was unable to address an issue raised therein the 28 U.S.C. § 2255 Motion due to the materials/documents being missing from the legal property forward to MDC-Brooklyn.

For the reasons to be set forth herewith, Plaintiff submits that Summary Judgment should be deemed favorable to Plaintiff.

1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

Mark Garnes,                    :

       Plaintiff,            :

                          :

      v.                      :          Docket No.: 00-CV-0700-1(WWC)

                          :

Janet Reno, et al.,             :

       Defendants.           :

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**MEMORANDUM OF LAW**
**IN   SUPPORT**

**FILED**
**HARRISBURG**

JUN 1 4 2001

MARY E. D'ANDREA, CLERK

Per_____

DEPUTY CLERK

**STATEMENT OF FACTS**

    Upon Plaintiff being writ to court thereon August 12th, 1998,
Plaintiff was summoned to R & D (Receiving and Discharge) on August
11th, 1998 to pack all property for storage, except for the legal
materials/documents necessary to further adjudicate in the district
court and other courts Plaintiff was litigating.

    Defendant Fegley being the Officer who itemized Plaintiff's
property for storage was advised by Plaintiff that all legal
materials/document would be need for further litigation in the
courts.   Plaintiff requested that all legal materials/documents
will be transferred with Plaintiff by the transport Officers.

    On August 12th, 1998, upon reaching the R & D for transferring
on writ, Plaintiff requested of Officer Davenport, whether the legal
materials/documents were being transferred with Plaintiff.   Officer
Davenport advised he was not aware of the matter.   Upon arrival

1

Court of Pennsylvania (Eastern District) denying PLaintiff's
Complaint pursuant to Loss and Damaged Property; District of
California (Central District District) Motion/Complaint for the
Return of Property ($31,295.00)(only portions of these documents
were received). Defendant's Statement of Material Facts, at 6, ¶19

Documents fowarded to Plaintiff's son, Tyrone L. Williams,
on June 17th, 1998, in part, consisting of legal materials were
the documents pertaining to the Complaint, Summary Judgement, Appeal
Brief, etc. to the matter filed in the District Court for the
District of Columbia.  Defendant's Statement of Material Facts, at
6-7, ¶20.

The documents received therefrom the **24" (Defendant's
Record to Support Brief, at R. 24 & 26)** consisting of **18" (R. 30)**
was either accepted as was or returned by Officer Saez.   Plaintiff
accepted with the stipulation that the measurement be inscribed as
opposed to Plaintiff refusing to sign.   The **18"** inscription
confirming the legal materials received.   To which, the legal
materials received in addition to the above mentioned were:
Plaintiff's actual 28 U.S.C. § 2255 Petition submitted to the
District Court (E.D.N.Y.); the Government's Response Letter;
Petitioner's Traverse; Petitioner's Postconviction Rehabiliation
Motion **(R. 171-172, R. 177-178);** and the Trial Transcripts.

Missing from the itemized legal property, the remaining
**6"** are the wiretap orders, affidavits, authorization applications,
sealing orders, transcribed transcripts of each wiretap telephone,
call, suppression hearing transcripts, Fatico Hearing Transcripts,
Indictment, Docket Sheets, various pre-trial motions, and other
tidbits of legal documents (i.e., Letter Motions by Defense Counsel,
and the Prosecuting Counsel, etc.)  **(R. 80-(footnote 4)**

Upon the conclusion of the 28 U.S.C. § 2255 proceedings, that is, the re-sentencing, counsel for Petitioner, possessing the aforementioned documents, to which Plaintiff had given to counsel to review for defending the submitted said motion.  Counsel had not received all doucments in respects to the petition and case.  Counsel returned the documents to Plaintiff's son, Tyrone L. Williams, who went to the office of Bradley Simon to retrieve the legal documents.

Counsel addressed the District Court Justice, Hon. Edward R. Korman to the concerns of Plaintiff not receiving all of the legal property pertaining to the case at bar.  **(A docket sheet will be needed to clarify)**  To which, Hon. Korman Ordered MDC-Brooklyn to receive the property accordingly and to have Petitioner take possession of the legal property pertaining to the legalities at that time.

Certainly Plaintiff would not involve the presiding Justice in such a matter that would be invalid.  Such would surely impact the adjudication of the case at bar, presumptuously.

Seemingly, Defendant's motive for withholding this property was spawn by the first claim of the Complaint, dismissed by the Honorable Court here.  Nevertheless, Defendant Fegley sought to locate any material matters relative to the incident.  Speculation on behalf of Plaintiff, however plausible, due to the letters (2) written to Plaintiff by inmate Eugene Frazier, Inmate Number 81724-054 who made the allegations, being found.  Considering Plaintiff has been unable to locate these letters or the fact that Plaintiff's son or the mother of Plaintiff's child has been unable to locate such.

4

Plaintiff asserts here that the denial of access to hte courts focuses thereon the issues of the wiretap argument and the obstruction of justice claim raised in Plaintiff's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. It is here that Plaintiff was unable to file a complete appeal due to the documents/legal materials being missing from said property.

## ARGUMENT

Plaintiff contends here that Defendant Fegley's motive was ignited by the investigation not proven that Plaintiff conducted unauthorized conduct with a female staff member. Presuming that a search of PLaintiff's property would disclose some connection that would support the investigation's continuance or preclude Plaintiff's addressing this matter via litigation or administratively.

This assertion derives from the comment made by Counselor Jesse Barnes, there at MDC-Brooklyn, who telephoned Defendant Fegley in regards to the property being forward back to MDC-Brooklyn. In which Defendant Fegley stated that contraband was found in Plaintiff's property. However, as time elapsed, no incident report (infraction) was submitted to this accusation. Plaintiff suggest here that Defendant Fegley subtlely suggested that the letters from Inmate Eugene Frazier had been located in Plaintiff's property. Thereby withholding the property. To date, Plaintiff has not received the property.

The Supreme Court in the case of **Crawford-El v. Britton**, **523 U.S. ---, 140 L. Ed. 2d 759 118 S. Ct. ---(1998)** held that the prisoner was not required to adduce clear and convincing evidence

5

of improper motive in order to defeat the officer's summary judgment motion with respect to the First Amendment retaliation claim, as (1) it would not be unfair to hold the officer accountable for actions that she knew , or should have known, violated the prisoner's constitutional rights; (2) the proper balance did not justify a judicial revision of the law to bar claims that depended on proof of an official's motive, where, without precedential grounding, a change in the burden of proof for an entire category of claims would stray from the traditional limits on judicial authority; and (3) given the wide variety of civil rights and "constitutional tort" claims that trial judges confronted, broad discretion in the management of factfinding might be more useful and equitable to all parties than a categorical "clear-and-convincing" requirement."

Focusing here on the fact that Defendant Fegley certainly was aware of the constitutional rights being violated thereof the withholding of Plaintiff's legal materials/documents.   Preventing Plaintiff from adequately litigating in the courts.   Defendant Fegley and Plaintiff have a history from a previous prison (USP Lewisburg), in which, Defendant is well aware of Plaintiff's litigation throughout the years.   In which, the history shared were seemingly held on terms of respect as an officer and inmate, as provided by policy.   Plaintiff and Defendant have never encountered any matters other than respect.   Where it seems here now, that the shift resulted from the investigation for alleged misconduct with a female staff member.

In **Crawford-El v. Britton**, the officer sought to retaliate against plaintiff due to the exercising of the First Amendment right to freedom of speech.

6

Herein the instant case, the retaliation by Defendant impeded upon Plaintiff's right to access to the courts, Fifth Amendment protection guarantees this right.  To which, Defendant may not impair, abridge, impede, or interfere with this fundamental right to access to the courts.  Any obstruction thereof negates Plaintiff exercising this guaranteed right.  **United States Ex Rel. Mayberry v. Prasse**, 225 F. Supp. 752 (E.D.Pa. 1963), prisoner here in **Prasse** was litigating in the courts, upon the administration interfering with the prisoner's pending claims in the court, obstructed such claims by "disapproving" correspondence being mailed to various parties.  Where the matter of the interference affected the personal liberty of the prisoner.

Herein the instant case, a liberty interest was at stake, in which Defendant Fegley interfered by removing, confiscating, and/or misplacing the legal properties intentionally.  Plaintiff being a pro se litigatant throughout the years sought to collaterally attack the conviction and sentence thereby Motion to Vacate, Set Aside, or Correct Sentence.  "Since the basic purpose of the writ is to enable those unlawfully incarcerated to obtain their freedom, it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed."  **Johnson v. Avery**, 393 U.S. 483, 485 (1969).  See also, **Zilich v. Lucht**, 981 F. 2d 695 (1992); **Sigafus v. Brown**, 416 F. 2d 105 (7th Cir. 1969); and **Hiney v. Wilson**, 420 F. 2d 589 (2nd Cir. 1975) ("Additionally, confiscation of Hiney's legal papers may constitute a denial of access to the courts.")

Plaintiff asserts here that "actual injury" occurred when Plaintiff was unable to appeal or properly address the claim

-7-

pertaining to the wiretap orders, affidavits, authorizations, and sealing orders.  **Plaintiff's Exhibts 1 - 10**  Plaintiff's argument relevant to the wiretap documents was that the received copies were not original signatures of the Honorable Justice Raymond J. Dearie another Justice authorizing the wiretap orders.  Nor were the signatures of the affidavits originals, suggesting that the documents were not valid.

Furthermore, the language of the documents were "boilerplate" which omitted any detailed derivatives of the surveillance and the investigation of the criminal activities of the "Nichols/Mason/ GIbbs Organization."  **U.s. Giordano**, 416 U.S. 526 (1974)

**Giordano**, illustrated the Fourth Amendment violations incurred from the illegal wiretap interceptions.  **Id. at** 524 and 527. It is here that Defendant Fegley obstructed Plaintiff's access to the courts.

In addition to this obstruction, Defendant Fegley impeded thereupon Plaintiff's access to the courts thereby removing the Fatico Hearing Transcripts which were pertinent to the claims for Obstruction of Justice raised in Plaintiff's pro se 28 U.S.C. § 2255 Petition.  **Plaintiff's Exhibits 11 - 16**  The Supreme Court addressed the enhancement of obstruction of justice.  Where the evidence must be reviewed and independant findings concluded to establish the obstruction of justice.  **U.S. v. Dunnigan,** 122 L. **Ed. 2d 445 (1993).**  Here now, Plaintiff is before the Court of Appeals for the Second Circuit on a second petition pursuant to 28 U.S.C. § 2255, relevant to the held decision of **Apprendi v.**

New Jersey, 99-478.  In which, the Honorable Court and the U.S.

Probation Department concedes that Plaintiff here has an issue

relevant to **Apprendi**.   See **Plaintiff's Exhibits 17 - 20**

The held decision of **Apprendi** addresses the constitutional

protections thereof the Fifth and Sixth Amendment, where the fact

that an element was not inscribed therein the indictment denotes

constitutional violations.   Herewith the instant matter, the

Defendant's confiscation of Plaintiff's legal property pertaining

to the enhancement for obstruction of justice, notably, the Fatico

Hearing Transcripts has impeded in furtherance, Plaintiff's access

to the courts.

"This language suggest that a prisoner must allege something

more than that the quality of his argument was diminished because

of defendant's practices.   In simple terms, a claims that prison

practices kept a prisoner from raising an argument or asserting

a claim in his pleadings, in response to a dispositive motion,

or at trial would likely to show harm; . . . Second, access-to-

court, as a Constitutional right, only applies to prisoners' lawsuits

that seek "to attack their sentences directly or collaterally,

[or] to challenge the conditions of their confinement."" **Arce**

**v. Walker,** 58 F. Supp. 2d 39, 43-44 (W.D.N.Y. 1999).

In regards to Plaintiff's prior litigating to the Court

of Appeals for the Second Circuit, thereof the initial 28 U.S.C.

§ 2255, Plaintiff was unable to include these claims therein the

Appeal due to the impediments placed upon him here mentioned.

The plaintiff in **Arce** claimed that defendant impaired his

access to the courts by confiscating and damaging his legal property.

**Id.** at 44   Despite **Arce's** complaint was dismissed and summary

was granted favorable to the Defendants, herein the instant case at bar, the "genuine issue" of fact, here disputing the Defendant's Statement of Material Facts and Brief in Support of Defendant's Motion for Summary Judgment, exist as aforementioned pertaining to each claim thereof the 28 U.S.C. § 2255 Petition and here now extended with the new ruling by the Supreme Court in the case of **Apprendi v. New Jersey**, 99-478.

Plaintiff submits here that the Honorable Court may grant depositions to support the facts hereof.   Such depositions with relevance to the comments of Counselor Jesse Barnes, as to the Defendant's statement that contraband was found in Plaintiff's property.   That counsel of the record for the petition pursuant to 28 U.S.C. § 2255 is deposed with regard to the mentioned hereof. Counselor Bradley D. Simon (Business Address may be obtained from the District Court-counsel address has since changed from representation of Plaintiff).   An affidavit or deposition may be obtained from the son of Plaintiff, Tyrone L. Williams, and any others with relevance to the matter herewith.   Plaintiff makes this request pursuant to Rule 56(e) and (f) of the Federal Rules of Civil Procedure.   To which, a continuance may be appropiated to procure the necessary supporting documents.   In which an evidentiary hearing shall be permitted hereof the discovery to be taken.

## CONCLUSION

For the reasons set forth herewith, Plaintiff respectfully request that summary judgment is granted in favor of the moving

party.

Respectfully submitted,

DATED: June 11th, 2001
Fort Dix, New Jersey

Mark A. Garnes - Pro Se
Reg. No. 24646-053
P.O. Box 7000-5812
FCI Fort Dix
Fort Dix, New Jersey  08640


## CERTIFICATE OF SERVICE

I, Mark A. Garnes, Plaintiff, Pro Se, hereby certify under
the penalty of perjury pursuant to 28 U.S.C. § 1746, that I have
mailed, certified, the original and four (4) copies of Plaintiff's
Motion for Summary Judgment with the appended Memorandum of Law
In Support, attached therewith the Affidavit and Exhibits of
Plaintiff, which has been forward to the Clerk of the Court and
the Defendant.   Each being forward to the following addresses,
respectively:

MAILED TO:

Clerk of the Court
United States District Court
Middle District of Pennsylvania
228 Walnut Street
P.O. Box 983
Harrisburg, Pa.        17108

Kate L. Mershimer, AUSA
United States District Court
Middle District of Pa.
228 Walnut Street
P.O. Box 11754
Harrisburg, Pa.        17108


DATED: June 11th, 2001
Fort Dix, New Jersey

Mark A. Garnes - Pro Se
Reg. No. 24646-053
P.O. Box 7000-5812
FCI Fort Dix
Fort Dix, New Jersey  08640

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

Mark Garnes,                          :
        Plaintiff,                  :

                        :        <u>AFFIDAVIT</u>

                        :        Docket No.: 00-CV-0700(WWC)

                        :

Janet Reno, et.al.,                   :
        Defendants.                 :

..............................................................

    I, Mark Garnes, Plaintiff, pro se, hereby attest the the foregoing is true and correct under the the penalty of perjury, deposes and says:

    1.   Upon being writ to the Eastern District of New York to challenge the conviction and sentence thereon collateral attack as a pro se litigant, I requested of Officer Charles Fegley, ISM, to permit my legal work/documents to be transported with me on August 12th, 1998.   On the same date, I inquired of Officer Davenport, the Officer on Duty therein R & D on the morning of my being transport whether my legal property had been placed on the transport bus.   Officer Davenport was not informed of this matter per his response.

    2.   Request of the Legal Property was made again upon reaching MDC-Brooklyn, where the transport bus Officer, believed to be named Byrd (this may be an error) advised that no property was present for plaintiff, only the named inmates.

    3.   Plaintiff requested of then Unit Manager Baggot to inquire to FCI Allenwood as to the legal property being forward to

MDC-Brooklyn.   Unit Manager Baggot spoke specifically to Defendant Fegley, who advised the property would be forward.   With respect to Defendant and Unit Manager Baggot have a history with Plaintiff at USP Lewisburg, this matter was obliged accordingly.

4.   Upon receipt of the property, Plaintiff received **18"** of the **24"** of legal materials noted.   Plaintiff inquired thereof Officer Saez as to the missing legal papers, Officer Saez advised that this was all that was mailed.   Plaintiff sought not to sign for the received legal property, with the intention of possessing the **18"**, Officer Saez advised he would have to send all the property back to FCI Allenwood should I refuse to sign.   Upon advisement, Officer Saez noted that he would inscribe the **18"** on the Form 40, property form as being received by Plaintiff.

5.   Some time thereafter, Plaintiff requested of Counselor Barnes, the Unit 4 Counselor to inquire about the remaining property of Plaintiff, more specifically, the legal materials to be forward to MDC-Brooklyn, to which, Plaintiff had not received the legal materials in total.   Upon speaking with Defendant Fegley, Counselor Barnes, in my presence while speaking with Defendant Fegley, advised me that contraband had be found in my property.   No indication that my property would be forward back to MDC-Brooklyn with the remaining legal material.

6.   Plaintiff here submits that the **legal materials** mailed to Plaintiff's son, Tyrone L. Williams on or about March 3, 1999, consisted of litigation from the District Court of Pennsylvania and portion of legal materials from the Central District of California. This material being mailed per "Request-Authorization to Mail

2

Inmate Package."   In addition to this matter, a second request of
the same was mailed to Plaintiff's son on or about June 17th, 1999.
Included were books, photos, and personal papers.   This legal
material consisted of documents pertaining to the civil litigation
therein the District of Columbia.

7.   At this point, Counsel for Petitioner [Plaintiff] had
possession of all materials pertaining to the Motion to Vacate, Set
Aside, or Correct Sentence, to which Plaintiff's son retreived from
Attorney Bradley D. Simon, by going to the office of counsel there
at 500 Fifth Avenue, 46th Floor, New York, New York 10110, Tel. 212-
730-8900.   To which, Plaintiff's son had called and arranged a
time to retreive the legal materials.

8.   Plaintiff sought to mail the mentioned legal materials
to his son due to the materials being of no further litigation.
Also, the second and last inclusion with other materials were mailed
due to Plaintiff given the impression by counsel that Plaintiff was
highly probable to receive time served as relief.   **Defendant's
Record To Brief In Support, at R. 171**

9.   Plaintiff sought the intervention of the Honorable
Justice Edward R. Korman to procure the remaining legal materials
from FCI Allenwood, to which MDC-Brooklyn opted to return the
property to FCI Allenwood on two occasions, presumed.   **Plaintiff's
Exhibit 20**

10.   Plaintiff submits that the legal materials not received
consist of the Wiretap Orders, Authorization Applications, Sealing
Orders, Transcribed Transcripts of each wiretap telephone call,

3

Suppression Hearing Transcripts, Fatico Hearing Transcripts, Indictment, Docket Sheets, various pre-trial motions, and other tidbits of legal documents (i.e., Letter Motions by Defense Counsel and the Prosecuting Attorney, etc.).

11.   Plaintiff is currently litigating in the Second Circuit pertaining to the held decision of **Apprendi v. New Jersey**, 99-478, in which, the Honorable Justice Edward R. Korman concedes that Plaintiff's sentence is beyond the 20 year maximum, also the U.S. Probation Department concedes with explaination.   **Plaintiff's Exhibits 17 - 19.**   The Suppression Hearing Transcripts and the Fatico Hearing Transcripts pertain to issues thereof the enhancement by the sentencing court, which Plaintiff submitted as a claim therein the 28 U.S.C. § 2255 Motion, which Defendant Fegley obstructed the continuance thereon appeal.

12.   Plaintiff submits here that correspondence for the request of said materials has been requested from the Executive Office of the United States Attorney, Freedom of Information, FOIA/PA Request No: 01-135.

13.   Plaintiff submits here that Inmate Eugene Frazier, Reg. No. 81724-050, sent Plaintiff two letters by the SHU Orderly while being detained in the Segregation Housing Unit ("SHU"), admitting to Plaintiff that the allegations he [Frazier] had made against Plaintiff were not true.   These letters were missing from Plaintiff's property to aid as evidence to the supporting facts and litigation for Plaintiff's Complaint filed with the Honorable Court here.

WHEREFORE, Plaintiff respectfully request that the Honorable Court grant summary judgment in favor of the Plaintiff with further relief requested and as the Honorable Court may deem proper.

Respectfully submitted,

DATED: June     , 2001
Fort Dix, New Jersey

JUN 0 7 2001

Mark A. Garnes - Plaintiff
Pro Se Litigant
Reg. No. 24646-053
P.O. Box 7000-5812
FCI Fort Dix
Fort Dix, New Jersey   08640

DAVID J. STEELE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires May 22, 2002

JUN 0 7 2001

5

PLAINTIFF'S  EXHIBITS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



————————————————————X

United States of America,           :
       Plaintiff,           :

    -against-           :  Docket No. 88 CR 496(S-14)
                            (ERK)
Mark Garnes,           ;

       Defendant.           :

————————————————————X           30

## MEMORANDUM OF LAW IN SUPPORT
## OF MOTION PURSUANT TO 28  U.S.C.
## SECTION 2255

    As a matter of introduction, the petitioner respectfully
submits that the events which transpired in the instant case
constitute a right to effective assistance of counsel,
protected by the Sixth Amendment of the United States
Constitution; a sufficiency of the evidence to establish
guilt, proper Base Offense Level and Criminal History Category.

    In short, the petitioner respectfully request fact-
finding hearings based upon the noted matters herein.

### STATEMENT OF ISSUES UNDER CONSIDERATION

    The petitioner respectfully request that this Court
adjudicate the following issues of law, to wit:

    1.  The petitioner should receive fact-finding
hearings to determine the ineffective assistance of counsel,
insufficiency of evidence to establish guilt, improperly
imposed enhancement for obstruction of justice by two
points to the Criminal History Category and a one point

P.E.1

In relation to these stipulations made by counsel, the trial court's charge to the jury on all the elements and relevancy was not objected to by counsel, to which, counsel concurred with the instructions. "These instructions necessarily conveyed the concept that a resaonable doubt would arise in the absence of evidence sufficient to show guilt beyond a resonable doubt. The charge as a whole correctly and adequately conveyed to the jury the requirement of proof beyond a reasonable doubt." Foran v. Metz, 463 F.Supp. 1088, 1091-92 (S.D.N.Y.). Whereas, the jurors as the finders of guilt or innocence had taken this charge into consideration. "If any rational jury could have found the defendant guilty beyond a reasonable doubt, the conviction will be affirmed." U.S. v. Robinson, 8 F.2d. 398, at 417 (7th Cir. 1993).

"Plain error connotes not only clear error, but also prejudicial error likely to have changed the outcome of trial." U.S. v. Wolf, 787 F.2d. 1094, at 1098 (7th Cir. 1986) "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." U.S. v. Frady, 456 U.S. 152, at 163, 71 L.Ed.2d. 816, 827, 102 S.Ct. 1584 (1982)

For ths reason in conjunction with the aforementioned stipulation, the petitioner request a fact-finding hearing to the evidence herein.

The petitioner further contends that counsel was ineffective in failing to object to the Government's use of evidence which was not valid, authentic and procured

P.E.1a

16

unlawfully.

The Wiretap Orders, Affidavits and Applications were
"Boilerplate" after the initial documents on March 9th, 1988.
The successive documents concerting the wiretap were notably
verbatim, with the exception of an individual co-conspirator
being incepted to the documents mentioned herein.   This
matter was not clarified on further grounds, that within the
'copies' that the petitioner possessed.   As a result of the
petitioner scrutinizing the documents, the petitioner
noticed that all the language thereafter March 9th, 1988 was
verbatim, nor was the petitioner named within the documents,
on July 19th, 1988, James Gibbs was named as "Country."   Upon
the Complaint being issued on August 10th, 1988, the petitioner
was named as "Country Mark", with these factors, counsel did
not concern the matters therein that were disputable, to
raise on suppression hearing.   Counsel made no attempts to
investigate, inquire, or consider the methods of how the wiretap
authorization was procured.   Furthermore, the 'copies' that
the petitioner possess of these documents show the Honorable
Raymond J. Dearie's signature on an attest copy for the March
9th, 1988 Order, thereafter, concerting the signatures are
agents Dennis Tanner and Richard Martinez.

"Access to records allows defendant to argue Motion to
Suppress in well formed manner."   Alderman v. U.S., 394 U.S.
165, 183-84.   In Persico, the Court, "holding there, however,
was expressly predicated on an assumption by the Court 'that
the communications were not intercepted in accordance with the
specified procedures and thus that the witnesses' potential

-17-

P.E. 2

testimony would be 'disclosure' in violation of Title III."
In Re Persico, 491 F.2d. 1156, at 1160.   See 18 U.S.C.
§§2511(1), 2517(3).   Furtherin, "Where the Government
produces court orders for the interception, however, and the
witness nevertheless demands a full-blown suppression hearing
to determine the legality of the order ..." Id. at 1160.
Also therein, pursuant to 18 U.S.C. §2518(10)(a), "provides
that any aagrieved persons, as defined in section 2510(11),
discussed above, in any trial hearing or other proceeding in
or before any court ... may make a Motion to suppress the
contents of any intercepted wire or oral communications or
evidence derived therefrom ... " Id. at 1161.

        Congress has noted that, "illegal wiretap evidence
must be excluded from all grand jury proceedings, hearings or
suppress evidence were not to be permitted during such
proceedings ... by interpreting the statute as requiring
exclusion only when it is clear that a suppression hearing
is unnecessary, as when the Government concedes that the
electronic surveillance is patent, such as, for example
when no prior court order was obtained, or when the
unlawfulness of the Government's surveillance has been
established in a prior judicial proceeding.   In these
situations both statutory policies --- the exclusion of illegally
acquired evidence and the maintenance of unimpeded grand jury
proceedings --- are served.   But where illegality is claimed
and, if established, can be established only by way of a
plenary suppression hearing, one important aim of the
legislation would be frustrated." Id. at 1162-63

Seemingly, the wiretaps were the bases of the indictment presented to the Grand Jury as evidence to indict.   For the wiretap conversation mentioned therein Complaint (p. 36-37) was not used in the petitioner's trial, considerably this matter was significant to inquire, to which, this evidence was part and portion to the evidence to indict the petitioner, whereas, this conversation was not used as evidence and was insufficient to establish grounds presented to the Grand Jury. Counsel did not contest this matter, nor the entirety of the Wiretap Documents of Authorization.

The petitioner agrues herein that the Government did not meet the statutory requirements for the successive documents thereafter March 9th, 1988.   The Government did not meet the "necessity requirements" herein.   The Wiretap Applications did not contain "full and complete statement of facts" necessary to satisfy the requirements of the Wiretap statute pursuant to 18 U.S.C. § 2518(1)(c).

In enacting the federal wiretap and eavesdropping statute (18 U.S.C. §§2510-2520 (1982)), Congress' overriding concern was the protection of privacy, Gelbard V. U.S., 408 U.S. 41, 48, 92 S. Ct. 2357, 2361.   Indeed, the stringent statutory scheme is bottomed on the notion that "few threats to liberty exist which are greater than that posed by the use of eavesdropping devices."   Berger v. New York, 388 U.S. 41, 63, 87 S.Ct. 1873, 1885 (1967)   This notion is even more important when interceptions were utilized, as here, to invade the privacy of a person's home. Payton v. New York, 445 U.S. 573, 100 S. Ct. 1371 (1989).

-19-

It is with these axioms in mind that counsel should have submitted motion to suppress all of the wire and oral interceptions which were seized between March 9th, 1988 and August 11th, 1988.

Pursuant to 18 U.S.C. § 2515, provides that no part of the contents of any wire or oral communications and no evidence derived therefrom, may be received at certain proceedings, including trials, "if the disclosure of that information would be in violation of this chapter."   Section 2518(10)(a) provides that:

> Any aggrieved person in any trial,
> hearing, or proceeding in or before
> any court, department, officer, agency,
> regulatory body, or other authority
> of the United States, a State, or a
> political subdivision thereof, may
> move to suppress the contents of
> any intercepted wire or communications,
> or evidence derived therefrom, on the
> grounds that--
>
> (i)  the communication was unlawfully
> intercepted;
>
> (ii)  the order of authorization or
> approval under which it was intercepted
> is insufficient on its face; or
>
> (iii)   the interception was not
> made in conformity with the order of
> authorization or approval.

In U.S. v. Giordano,  416 U.S. 526, 94 S. Ct. 1820 (1974), the Supreme Court affirmed the total suppression of a wire intercept, where there was a violation of subsection

"i" based on an improper delegation for approval of a wiretap to an executive assistant attorney general.

In <u>Giordano</u>, the Court held that the improper delegation rendered the "communication unlawfully intercepted." The Court further reasoned that the issue of suppression did not turn on the judicially fashioned exclusionary rule aimed at deterring Fourth Amendment violations but on the specific provisions of the statute.    <u>Id.</u> at 524.    The heart of the Court's rationale was that,

> We think Congress intended to require
> suppression where there is failure to
> satisfy any of those statutory requirements
> that directly and substantially implement
> the congressional intention to limit the
> use of intercept procedures to those
> situations clearly calling for the
> employment of this extraordinary
> investigative device.

<u>Id.</u> at 527

The Court then held that inasmuch as the provisions in the statute for pre-application approval were intended to "play a central role in the statutory scheme - suppression must follow when the statute is ignored."

Nevertheless, in the superseding indictment, the petitioner is charged in 'Count Two', with a violation of § 841.    It is inconceivable that the grand jury presentation failed to include substantial evidence secured through electronic surveillance or derived from the fruits thereof.

Is further respectfully submitted that under 18 U.S.C. §§ 2515 and  2518(10)(a) and <u>U.S. v. Giordano</u>,  416 U.S. 505

(1974), all evidence derived from the wiretaps which were obatained in violation of Title III must be suppressed.

Nowhere in the applications for the wiretap orders did the government provide the Court to which application was made with "details" as to the commission of § 841 or § 924(c) within the meaning of § 2518(1)(b)(i).

When evidence of crimes other than those specified in the application are inadvertently intercepted, § 2517(5) specifies the procedural safeguards necessary for their disclosure.

Subsection (3) of § 2515 relates to the disclosure of wiretap evidence and evidence derived therefrom in testimony or otherwise before any criminal proceeding, including a grand jury.   Thus, Congress' intention that an additional safequard be erected before such evidence is presented in a criminal proceeding is clear.

The meaning of § 2517(5) is plain.   Where evidence is obtained from wiretaps which relates to crimes other than those specified in the order authorizing or approval of the wiretaps, such evidence may only be disclosed at trial or before a grand jury when such use is expressly authorized or approved by an appropiate judge on specific application.

Herein the instant case, it appears that the issuing judge was not fully informed concerning the availability of alternative investigative procedures.   As the judge was required to make a finding that alternative investigative procedures had been tried and failed, or appeared to be unlikely to succeed if tried, omitting the current contacts

P.E. 7

between the government's informants and the conspirators was a substantial and material omission.   An intentional or reckless omission of this nature, which could have affected the decision of the judge to authorize the use of electronic surveillance, is tantamount to a materially false statement in the affidavit requiring that the fruits of the resulting unlawful electronic surveillance be suppressed. Franks v. Delaware,   430 U.S. 154 (1978), U.S. v. Vasquez, 605 F.2d. 1269, 1282 (2d. Cir. 1979).

The Government may contend that no hearing is required unless the petitioner makes a substantial showing that there were no contacts to the investigative procedures, informants and/or C.Is. to the petitioner's existence in this conspiracy. And that such contacts were, should they had been made, were material to the determination that alternative investigative procedures were unlikely to succeed.   While ordinarily the petitioner must meet this burden.   See Franks, at 155-56.

The petitioner was not named throughout the wiretap documents, to which, the Complaint named the petitioner, but the conversation noted therein, did not correspond with the petitioner, this conversation was not used in the petitioner's trial.

Counsel was presented substantial reasonableness to inquire.   For the elements to suppress were supportive to what the inquiries would have unveiled.

The Second Circuit has exercised its legal powers over the matter herein.   In the case of Carneiro, there are similar factors to which the petitioner argues herein.

*Pc 2*

"The government's applications for the wiretaps failed to make the statutorily required showing of necessity and the wiretap orders were impermissibly broad."  U.S. v. Caneiro, 861 F.2d. 1171, 1175  (9th Cir. 1988).

Recently, in the Tenth Circuit, the District Court overturned the case of Castillo-Garcia, to which, the 'necessity requirements' were not properly met.   "The matter is before the Court on numerous motions to suppress evidence obtained as a result of five separate wiretaps utilized by the Government during the underlying investigation of this case." U.S. v. Castillo-Garcia,  920 F.Supp. 1537, 1540 (D. Colo. 1996).

"The primary issue is whether the wiretap authorizations for any or all of the five wiretap applications for any or all of the five wiretaps sufficiently complied with a statutory mandate that the applications contain 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous' --- sometimes called the 'necessity requirement'." Id. at 1540.

The Castillo-Garcia and the Carneiro are relative to the case herein.   The successive wiretap affidavits and applications thereafter the initial documents were of the "Boilerplate" language, recitation as noted in Castillo-Garcia. Furtherin, "that entire paragraphs consist of 'boilerplate' language which does not vary from one affidavit to the next." Id. at 1543.   Counsel for the petitioner did not consider

the 'boilerplate' aspects of the documents and seemingly

viewed no reason to question, contest or raise the issue

before the Court.

Therein, "Moreover, the <u>Second Circuit</u> recently

confirmed what several other circuits have held:  'normal

investigative procedures' refer to 'non-electronic investigative

techniques'."   <u>See</u> cites mentioned <u>Id.</u>  at 1545.   "Even

though the Government may be continuing its investigation

of the same conspiracy or broadening its investigation

to encompass additional conspiracies or conspirators, successive

applications for authority to wiretap additional numbers in

the names of different individuals at different locations

invade separate and distinct fourth amendment rights and must

each be supported by a 'full and complete statement' concerning

alternate investigative procedures."   <u>Id.</u>  at 1545.

The petitioner relies on the recent decision herein

<u>Castillo-Garcia</u>, and its support from various other Circuits,

including the Second Circuit.

Counsel was entitled to suppress the evidence pursuant

to 18 U.S.C. § 2518(10)(a).   <u>Resha v. U.S.</u>, 767 F.2d. 285,

at 289 (6th. Cir. 1985).   As a result of the wiretap document

being unlawful, the evidence gleaned therefrom becomes "fruit

of the poisonous tree."   <u>Wong Sun v. U.S.</u>,  371 U.S. 471,

9 L.Ed.2d. 441, 83 S. Ct. 407  (1963).

Furthermore, the petitioner request the Government

respond in accord to the wiretap unlawfulness pursuant to

18 U.S.C. § 3504(A)(1).

The result of counsel's performance noted herein has

P.S 10

remaining counts to determine the degree of overlap and
similarity between the two.    Id.    Finally, the Court
makes "... a general assessment of the strength of the
government's case on the remaining counts."    Id.

Applying this three-part test, it is clear that entry
of the 'subject in connection' on 'Count Three' would require
the sentences on 'Counts One and Two' to be vacated also.

Finally this count also functioned as an overt act
for the conspriacy count, and thus undoubtedly contributed
to the conviction on that count.    In conjunction with the
testimony of Government Witness, Viola Nichols.    The
'compelling prejudice' test was, therefore, amply satisfied.
U.S. v. Jones, 16 F3d. at 493.    In conclusion to this
matter, "the jury's verdict of guilty on Count Three may well
have been influenced not only be the unwarranted inference
that ... was involved in an arson but also by the very
allegation of a ... charge."    644 F.2d. 85, at 88 (2nd
Cir. 1981).

Given these facts, the sentences on 'Counts One and
Two' should be vacated in accordance to law.

Furthermore, the convictions on all the counts within
the indictment should be vacated as a result of the "retroactive
misjoinder" due to 'Count Three' being 'subject in connection'
to the other two counts.

III.    IMPROPERLY IMPOSED ENHANCEMENT FOR
        OBSTRUCTION OF JUSTICE AND A ONE
        POINT ENHANCEMENT FOR PAYMENT OF A
        FINE IMPROPERLY IMPOSED

-37-

P.E. 11

The petitioner received a two point enhancement for 'obstruction of justice', to which the petitioner is 'alleged' to have suborned untruthful testimony from Carmen Ayala and Linda Rodway, whom testified on behalf of the petitioner.

Also, the petitioner is 'allegedly' to have participated in a $500,000 exchange for co-defendant Brain Gibbs to alter his testimony.

First, the petitioner did not 'solicit' Carmen Ayala and Linda Rodway to perjure themselves during the Suppression Hearing, to which, Carmen Ayala testified, or during the trial, to which, Linda Rodway testified.   These two witnesses were called on by counsel, considering government's case strongly in their favor.

Second, the petitioner was not able to participate in the $500,000 for Brian Gibbs to alter his testimony. The petitioner's wealth was not enumerated to a third of this, nor was this matter the initiative of the petitioner.

This Court did not weigh or consider this matter in depth, the testimony of Carmen Ayala was noted by the Court, as "inherently incredible" only to note that Ayala did not know what was in the apartment or what petitioner did for a living was the extent of the Court's findings.   Although the Court recognized elements of the truth.   (Tr. 155)

Furthermore, there were no findings to indicate that Linda Rodway had presented any form of untruthful testimony.

The letters written to co-defendant Brain Gibbs by the petitioner was not intended to obstruct justice, this matter was concocted by Government Witness Lorenzo Nichols,

who was in the mist of debriefings with the Government
during these writings, and obviously had more to gain
from such than the petitioner.

In U.S. v. Dunnigan,  --- U.S. ---, 113 S.Ct. 1111,
1119, 122 L.Ed.2d. 445 (1993), the Supreme Court "when the
court wishes to impose the enhancement over the defendant's
objection, the court 'must review the evidence and make
independent findings necessary to establish a willful
impediment to or obtruction of justice ... "   The Second
Circuit has documented that factual findings are significant
when imposing sentencing departures.   "A district court
may apply the obstruction of justice enhancement for perjury
only if it finds that the elements of perjury are met.   The
court must make findings as to each element."   U.S. v. Amato,
46 F. 3d. 1255, at 1265  (2d. Cir. 1995)  See cites therein.

Should the court find that the petitioner participated
in the obstruction of justice in the matters therein, the
court must find that the petitioner, "consciously acted with
the purpose of obstructing justice."   Id.  at 1164 (quoting
U.S. v. Rivera,  971 F.2d.  876, at 894 (2d. Cir. 1992).
In Johnson, he had "suborned the perjurious testimony of
his tattoo artist.   Here, after weighing the evidence, Judge
Leval had very firm convictions.   He found '(a) that the
testimony of Miranda was false; (b) that that falseness
was intended to help the defendant; and (c) that that
falseness was suggested by the defendant in these very
conversations with Miranda."   Judge Leval went on to state

P.S 13

"as the finder of fact, would find, even if I were faced
by a clear and convincing test that the defendant was
suborning perjury and that Mirand responded by
delivering perjury at trial."    U.S. v. Johnson,  968 F.
2d.  208, at 215  (2d. Cir.  1992);    U.S. v. Perdomo,  927
F.2d. 111, at 117-18  (2d. Cir.  1991).

    "In fathoming the meaning of 'attempt[] to impede
or obstruct the administration of justice' as used in § 3C1.1,
we draw on general criminal law principles regarding attempts
to commit crimes.   We have held that a person is guilty
of an attempt to commit a crime if he had the intent to
commit the crime and engaged in conduct amounting to a
substantial step towards its commission."   U.S. v. Shoulberg,
895 F.2d.  882, at 885  (2d. Cir.  1990), "A substantial
step is explained therein."

    The petitioner regards the acts of this attempt in
comparison to "an enemy in the spies camp", whereas, the
Government Witness, Lorenzo Nichols was being debriefed by
the Government, to which, he was becoming an informant/witness
for the Government.   The actions of the petitioner's
participation in the writings of letters were based on the
assumptuous fact that co-defendant, Lorenzo Nichols could
not 'write that well',  Lorenzo Nichols seemingly 'schemed'
the petitioner to write these letters to enforce his
credibility with the Government.   The fact that he was part
and portion to the co-defendant meetings that the petitioner,
Joesph Rogers and Lorenzo Nichols were concerting for trial
purposes upcoming.   To which, the petitioner's trial began

Ds

initially on September 25th, 1989, resulting in a mistrial
due to Lorenzo Nichols being injected into the Witness
Protection Program as result of his debfriefings and
confirmation by the Government that he is suitable for the
requirements of the program.    Whereas, Lorenzo Nichols
participated in the meetings concerning the petitioner's
trial strategies and seemingly concocted this matter of
writing the letters to enhance the petitioner's chances of
guilt and a stiffer sentence.    The petitioner relies here
on Massiah, where the defendant was released on bail, after
being indicted with other persons for violating narcotics
laws.    While free on bail the defendant had conversation
with one of the co-defendants, unaware that the co-defendant
was co-operating with government agents.    Massiah v. U.S.,
377 U.S. 201, 12 L.Ed.2d. 246, 84 S.Ct. 1199.    "Had there
been no prior arrangements between Colson and the police, had
Colson simply gone to the police after the conversation had
occurred, his testimony relating Massiah's statements would
be readily admissible at the trial, as would a recording
which he might have made of the conversation.    In such event,
it would be said that Massiah risked talking to a friend who
decided to disclose what he knew Massiah's criminal activities.
But if, as occurred here, Colson had been cooperating with the
police prior to his meeting with Massiah, both his evidence and
the recorded conversation are somehow transformed into
inadmissible evidence despite that fact the hazard to Massiah
remains precisely the same-the defection of a confederate in
crime."    Id. at 377 U.S. 211.

Ps ie

The petitioner request a fact finding hearing on the matters herein.    And that the two point enhancement be vacated accordingly.

Furthermore, the petitioner was enhanced one point for a fine paid of $25 for 'Unlawful Possession of Marijuana'. The petitioner received no 'term of imprisonment' as a result of this incident.    The matter was an infraction for violating a Public Law.

"Essentially the guidelines require the court to examine prior behavior and assess points that reflect 'frequency, recency and seriousness of past crimes' to arrive at the appropiate Criminal History Category.    If the information indicates that the calculus 'does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that defendant will commit other crimes', the court may depart from the Guidelines." U.S. v. Cervantes, 878 F.2d. 50, at 52-53 (2d. Cir. 1989). Pursuant to 18 U.S.C. § 3559(a), "An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is;  (a) five days or less, or if no imprisonment is authorized, as an infraction."  "However, the Guidelines exclude certain misdemeanor convictions from a defendant's Criminal History Category calculus if they are similar to offenses listed in Section 4A1.2(c).  U.S. v. Moore, 968 F. 2d. 216, at 224 (2d. Cir. 1992). Also see U.S. v. Gonzalez, 922 F.2d. 1044, at 1049 (2d. Cir. 1991).  "Any offense for which the maximum authorized 'term of imprisonment' is not more

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MARK GARNES,                                      :          00 Civ. 4549 (ERK)

                              Petitioner,         :          **ORDER**

                - against -                        :

UNITED STATES OF AMERICA,                         :

                              Respondent.          :
-------------------------------------------------------------X

Korman, Ch.J.,

   The motion pursuant to F.R.Civ.P., Rule 60(b) is treated as a second successive

petition for a writ of habeas corpus. The first petition was granted in part and denied in part. The

Second Circuit recently affirmed the part of the order denying the petition. United States v. Garnes,

216 F.3d 1073 (Table), 2000 WL 898881 (2d Cir. June 29, 2000). Because this is a second petition,

it is referred to the Court of Appeals for an order that authorizes me to consider it. See Corrao v.

United States, 152 F.3d 188, 190 (2d Cir. 1998). Petitioner cannot avoid this precondition by

characterizing his motion as one pursuant to F.R.Civ.P. Rule 60(b). See D'Amico v. United States,

2000 WL 686371 (S.D.N.Y. 2000) (Leisure, J.) (for a thorough discussion of this issue).

   I add these words by way of assistance to the Court of Appeals. While petitioner has

raised a number of claims that do not appear to have merit, the petition contains a potentially

meritorious legal claim under the holding of the Supreme Court in Apprendi v. New Jersey, 120

S.Ct. 2348 (2000). The Supreme Court there held that, other than the fact of a prior conviction, any

fact that increases the prescribed statutory maximum must be submitted to the jury and proved

beyond a reasonable doubt. In petitioner's case the drug quantity, which was not submitted to the



jury, increased petitioner's sentence by five years. I attach a memorandum from our Senior Deputy Probation Officer discussing the issue.

The principal hurdle facing petitioner's application is the condition that the order permitting the filing of a second successive petition contain a certification that the petition is based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255 (last paragraph). While <u>Apprendi</u> appears to be new law as that term is used, it arose on direct appeal and does not contain any express ruling on its retroactive application on collateral review.

In sum, with these words of assistance, the Rule 60(b) motion is treated as a second successive petition for a writ of habeas corpus and is referred to the Court of Appeals.

SO ORDERED.

Brooklyn, New York
August 4, 2000

Edward R. Korman
United States District Judge



# MEMO

**Date:**     August 1, 2000

**To:**     HONORABLE EDWARD R. KORMAN
Chief U.S. District Judge

**From:**     TONY GAROPPOLO
Senior Deputy Chief U.S. Probation Officer

**Re:**     **U.S. v. Mark Garnes**
**88-CR-496 (ERK)**

    I reviewed the attached petition from Mark Garnes who is presently serving 300 months after a re-sentencing by Your Honor on July 30, 1999. This was a jury verdict drug case. Although the judgment appears to reflect that the Conspiracy to Distribute Heroin and 18 USC 924(c) gun counts were vacated, with the defendant only re-sentenced on the cocaine base count, I have learned from your case manager that Garnes was re-sentenced on both the heroin and cocaine base counts.

    Arguably, the defendant has an *Apprendi* issue. It seems clear that Your Honor found the guideline range to be 360 months to life, partially based on an amount of cocaine base being at least 50 grams (which elongated the statutory penalty on that count to 10 years to life). The heroin count carried a 20 year statutory maximum. *Apprendi* appears to reduce the cocaine base count penalty to 20 years, but the court would still have had statutory room for a 300 months sentence (achieved via a downward departure from 360 months) by sentencing the defendant to 240 months on one drug count and 60 months consecutive on the other, for an aggregate sentence of 300 months. The problem is that page 2 of the amended judgment (attached) does not break down the 300 month sentence by counts, so it cannot be determined how the court statutorily achieved its aggregate sentence. It seems that another re-sentencing may be necessary.

Jb
attachment

P.E. 19

10/30/98  66    LETTER dated 10/26/98 from Bradley D. Simon, Esq., to Judge
                Korman requesting that the Court direct officials at the
                MDC to accept delivery of defendant Mark Garnes' case file
                from Allenwood Federal Correctional Institution. (tj)
                [EOD 11/03/98]

11/18/98  67    ORDER as to Mark Garnes: directing the USA to reply to
                Bradley Simon's letter requesting that officials at the
                MDC accept delivery of deft's file and deliver it to him.
                USA is respond by 11/20. See bottom of letter dtd 10/26. (
                Signed by Judge Edward R. Korman , dated: 11/2/98) (jag)
                [EOD 11/18/98]

11/18/98  --    Copies of document #67 mailed to all parties by ERK's Case
                Manager. (jag) [EOD 11/18/98]

12/1/98   68    LETTER dated 11/22/98 from Andrew J. Frisch, AUSA, to Judge
                Korman regarding defendant's claim of not receiving his
                legal material. (tj) [EOD 12/01/98]

12/3/98   69    LETTER dated 11/19/98 from Andrew J. Frisch, AUSA, to Judge
                Korman regarding defendant Mark Garnes' difficulty in
                having his papers sent to him from the prison where he was
                until recently incarcerated to the Metropolitan Detention
                Center. (tj) [EOD 12/03/98]

1/12/99   70    LETTER dated 1/4/99 from Char Davis, to Office of the
                Clerk, requesting transcripts. **Pro Se responded. (mrm)
                [EOD 01/15/99]

6/1/99    71    LETTER dated 4/23/99 from Andrew Frisch, AUSA, to Paula
                Marie Susi, Case Manager to Judge Korman, requesting to
                adjourn the 5/7/99 pre-sentencing hearing of defendant Mark
                Garnes. (tj) [EOD 06/01/99]

6/1/99    --    NOTICE on doc #71, that the presentencing hearing of
                defendant Mark Garnes is adjourned until 6/11/99 at 10:30.
                (tj) [EOD 06/01/99]

6/18/99   72    RE-SENTENCING MEMORANDUM by Mark Garnes. (tj) [EOD 06/22/99]

7/30/99   75    CALENDAR ENTRY as to Mark Garnes ; Case called  before
                Judge Edward R. Korman   on date of 7/30/99 for
                Re-Sentencing. AUSA Andrew Frisch; Defense Counsel, Bradley
                Simon. Court Reporter/ESR Infantas. (fp) [EOD 08/13/99]

8/9/99    73    LETTER  dated 7/26/99  from Bradley D. Simon to Judge
                Korman, requesting that dft Mark Garne's motion for
                downward departure based upon extraordinry rehabilitation
                be granted. (fp) [EOD 08/09/99]

P.E. 20