Law Clerk's Copy

MCC:KLM:slg:2001V00253

FILED
HARRISBURG
JUN 28 2001
MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK GARNES, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | Civil No. 1:CV-00-0700 |
| | : | (Caldwell, J.) |
| JANET RENO, et al., | : | |
|     Defendants | : | |

### DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

This is a <u>Bivens</u> complaint brought by, Mark Garnes, an inmate formerly incarcerated at the Federal Correctional Institution ("FCI") Allenwood, White Deer, Pennsylvania. The sole remaining claim is an access the courts claim against Charles Fegley, the Inmate Systems Officer ("ISM") at FCI Allenwood.[1] Garnes claims his legal materials were not sent to the Metropolitan Detention Center ("MDC") Brooklyn, New York, while he was there on a writ and, as a result, he was unable to file a complete appeal to his §2255 motion.

On May 29, 2001, Fegley moved for summary judgment. Garnes did not file an opposition brief but, instead, moved for summary judgment on his own behalf. As explained below, Garnes' motion should be denied with summary judgment granted instead in favor of Fegley and against Garnes.

---

[1] On February 15, 2001, the Court dismissed three of Garnes' claims for failure to state a claim and dismissed fourteen Bureau of Prisons defendants. The Court allowed the one access to courts claim against Fegley to proceed.

## Statement of Facts

Preliminarily, the parties have submitted somewhat different versions of the facts. The differences are not material, however, in that, accepting as true that part of his legal papers were intentionally not forwarded to him, Garnes has absolutely no evidence, other than his speculation, that Fegley was responsible. Nor has Garnes demonstrated that he suffered an "actual injury" to maintain an access to courts claim. Nevertheless, for the Court's convenience, we summarize the parties' varying versions of the events.

### Plaintiff's Version

According to the complaint, Garnes was sent to MDC Brooklyn on a federal writ to argue a §2255 motion he had filed regarding his criminal convictions. The day before he left, Garnes told Inmate Systems Manager ("ISM") Fegley that he would need his legal materials when he left and Fegley told him that would be no problem. When Garnes received his property at MDC Brooklyn, Garnes received a legal folder of materials. Garnes said that he had more legal papers but that the officer said there were no more legal papers in the box. Complaint, at 9-10.

Garnes told the officer that the legal papers were important. The officer, as recalled by Garnes, called Fegley who said the remaining property would be forwarded. Garnes then claimed that the property was forwarded to MDC Brooklyn but

2

returned to Allenwood -- apparently without being given to him. Id., at 10.

In his complaint, Garnes then speculated that either the ISM at Allenwood or Brooklyn resolved the matter by sending his property to his son. Garnes then claimed that by the property being sent home to his son, he was handicapped in pursuing his litigation. Specifically, Garnes stated that "I was unable to fully execute my appeal with all issues included due to my legal papers being unfound by my son, therein the property that was mailed to him." Id. Garnes goes on to claim that he was unable to file a complete appeal as to his §2255 motion. Id., at 10-11.

In his affidavit filed with his motion for summary judgment, Garnes' story has changed. Now Garnes states that he received absolutely no legal property upon arriving at MDC Brooklyn. Garnes' Affidavit, ¶¶1-3.

Garnes then asked that his property be forwarded to him at MDC Brooklyn. Unlike the allegations in his complaint, where he apparently received nothing, Garnes now claims that he received 18 inches of legal materials but that 6 inches were missing. Id., ¶¶3-5. As to legal papers sent to his son, they concerned other litigation of his in other districts and were irrelevant. Id., ¶6.

Thereafter, in statements defense counsel do not quite follow, Garnes avers that his legal counsel possessed all materials pertaining to his §2255 motion, his son had arranged to get the materials, Garnes sought to mail these legal materials to his son

3

since he did not believe their would be further litigation since his lawyer had told him he likely would receive time served, and that he needed to have the New York judge procure the legal papers from FCI Allenwood. Id., ¶¶7-9.

From these vague assertions, Garnes appears to claim that he was not able to brief a suppression matter and a Fatico hearing matter. Garnes also suggests that he is going to handicapped in litigating a second §2255 motion he has pending in the Second Circuit concerning an Apprendi claim. Id., ¶¶10-13. In his brief, Garnes also asserts that the lack of legal documents prevented him from focusing on issues concerning wiretaps and obstruction of justice arguments in his appeal. Plt. Br., at 5.

**Critically**, at no point in his affidavit, or in his brief for that matter, does Garnes offer any evidence that his "missing" legal materials were caused to be missing due to the actions of Fegley. While Garnes certainly speculates or assumes that Fegley was involved, he has offered not a shred of evidence to refute Fegley's prior declaration that he did not interfere with Garnes' legal materials and did not obstruct Garnes' access to the courts. See R. 8-16 (Fegley Decl.).[2]

---

[2] Defendant relies upon the same exhibits and documents filed on May 29, 2001, in support of its original motion for summary judgment.

4

### Defendant's Version

Mark Garnes had been incarcerated at FCI Allenwood since January 31, 1996. (R. 6.) On August 12, 1998, Garnes was sent on federal writ to MDC Brooklyn. (R. 6.) In accordance with Bureau of Prisons ("BOP") policy, when an inmate is on temporary leave, i.e., sent on a writ to a facility other than that to which he is designated, the inmate does not take all of his personal property with him. (R. 10, ¶6; R. 20; R. 22.) Nevertheless, an inmate on temporary leave for court proceedings is permitted to retain essential legal materials. (R. 22.)

On August 11, 1998, the day prior to Garnes' scheduled departure on writ to MDC Brooklyn, Garnes reported to receiving and discharge in order to pack his property. (R. 9, ¶5.) Fegley conducted an inventory of Garnes' property in his presence. (R. 9, ¶6; R. 24.) As Fegley inventoried each item, he recorded the item on the Bureau of Prisons Form BP-383, entitled "Inmate Personal Property Record" ("inventory form").

As to legal papers, even though Garnes was allowed to bring "essential legal materials" with him on writ, Garnes elected to have this property stored. This was indicated by marking "S" for "stored" on the inventory form. (R. 10, ¶7; R. 24.) Garnes *verified* the accuracy of this action by signing the inventory form on August 11, 1998 at 10:15 a.m.. (R. 10, ¶7; R. 24.)

As indicated on the inventory form, most of Garnes' property was stored at FCI Allenwood with the exception of five

5

books and two photo albums that were to be mailed to "T. Williams at 1139 Clay Ave. #21, Bronx, 10456." (R. 10, ¶6; R. 24.) Again, Garnes signed the inventory form indicating that he agreed with the disposition of his property. (R. 10, ¶7; R. 24.)

Contrary to Garnes' assertions, Fegley did not refuse to allow Garnes to take his legal materials with him. If Garnes had requested to bring his legal materials with him, Fegley would have separated those materials from the remainder of his property, completed a manifest for the staff members from the bus crew to sign (to document they received the material), and he would have placed a copy of the manifest in Garnes' file. (R. 11, ¶8.) Since Garnes signed the form stating that the property (including his legal materials) was to be stored, Fegley packed the property and it was placed in storage (except for the items that Garnes had indicated should be mailed to an address he had provided). Garnes was then given a copy of the inventory form for his records. (R. 11, ¶9.)

On August 26, 1998, Garnes' Unit Manager at MDC Brooklyn telephoned Fegley and asked that he mail Garnes' legal materials to MDC Brooklyn. Out of an abundance of caution, Fegley mailed **all** of Garnes' property to MDC Brooklyn. Before mailing the property, Defendant Fegley modified the notations on the inventory form from "S" for "storage" to "M" for "mailed." In section 8 of the

6

inventory form Mr. Fegley wrote, "8/26/94 All property mailed to MDC Brooklyn Per Request."[3] (R. 11, ¶10; R. 26.)

On August 27, 1998 Garnes' property was mailed to MDC Brooklyn. (R. 12, ¶11; R. 28.) The United Parcel Service ("UPS") shipping record clearly indicates that three boxes were shipped to MDC Brooklyn with the reference of "Garnes" and Garnes' federal register number. (R. 12, ¶12; R. 28.[4])

On September 3, 1998, MDC Brooklyn received all of Garnes' personal property that was shipped from FCI Allenwood. (R. 30.) The inmate personal property record indicates that Garnes was permitted to keep his legal materials with him, as evidenced by the notation "K" for "keep in possession" next to the words "legal materials." As noted in block 7(e) of the inventory form, a MDC Brooklyn staff member noted "Rest of property returned back to institution (ALM). Inmate here on writ." (R. 30.) The remaining property was mailed back to FCI Allenwood via UPS. (R. 30, block 7(e)).

Garnes signed the inventory form which reads, "I have today reviewed the property returned to me." (R. 30, block 10.) In addition, block 10 reads in part:

> The inmate by signing below certifies the accuracy of the inventory, except as noted on the form, relinquishing of all claim to articles listed as donated, receipt of all

---

[3] The year written by Fegley was an error. For some unknown reason, Fegley wrote "94" rather than "98."

[4] The name and register number of another inmate has been redacted.

7

>       allowable items, and receipt of a copy of the inventory.
>       When the inmate claims a discrepancy in the inventory,
>       the receiving officer shall attempt to resolve that
>       discrepancy. If the inmate states that there is missing
>       or damaged property, this information should be noted
>       under Comments.

(R. 30.)

The inventory form indicates that Garnes received **18 inches** of legal materials and that the remainder of his property would be shipped back to his designated institution, FCI Allenwood. (R. 30.) Thus, Garnes did receive his legal materials at MDC Brooklyn and the remainder of his property was mailed back to FCI Allenwood per BOP policy. The inventory form does not indicate what the legal materials consisted of that Garnes received; nevertheless, it is clear that Garnes did receive his legal materials and consented to the rest of his belongings being shipped back to FCI Allenwood. (R. 30.)

Thereafter, in mid-October 1998, Fegley was again contacted by staff at MDC Brooklyn who asked that Garnes' property be sent back to MDC Brooklyn. Fegley does not recall personally re-mailing Garnes' property to MDC Brooklyn staff nor does he recall handling Garnes' property at all after mailing it to MDC Brooklyn in August of 1998. (R. 12-13, ¶14.)

Records indicate that on two occasions Garnes requested that portions of his legal material be mailed to a personal residence. A "Request- Authorization to Mail Inmate Package" dated March 3, 1999, indicates that Garnes requested to have his legal materials mailed from MDC Brooklyn to Mr. Tyrone L. Williams in the

8

Bronx, New York. (R. 32.) Garnes signed this request and dated it March 3, 1999. (R. 32.) This form does not detail what documents were mailed home, it simply refers to "legal material." (R. 30.)

A second "Request- Authorization to Mail Inmate Package" dated June 17, 1999 indicates that Garnes again requested to have some of his legal materials mailed out of MDC Brooklyn to a personal residence. This form indicates that on June 17, 1999 Garnes requested to have his "books, **legal material**, photos, personal papers, mail" (emphasis added) shipped to Mr. Tyrone L. Williams in the Bronx, New York. (R. 34.) On August 19, 1999, Garnes returned to FCI Allenwood. (R. 6.)

### Question Presented

Should summary judgment be granted in favor of Fegley and against Garnes in that Garnes has not presented any evidence to establish that Fegley interfered with his legal papers and, further, in that Garnes has not met the "actual injury" requirement for an access to courts claim?

### Argument

**SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF FEGLEY AND AGAINST GARNES IN THAT GARNES HAS NOT PRESENTED ANY EVIDENCE TO ESTABLISH THAT FEGLEY INTERFERED WITH HIS LEGAL PAPERS AND, FURTHER, IN THAT GARNES HAS NOT MET THE "ACTUAL INJURY" REQUIREMENT FOR AN ACCESS TO COURTS CLAIM**

A.  Lack of Admissible Evidence to Defeat Defendant's
    Motion for Summary Judgment.

To obtain summary judgment as a plaintiff, or to defeat summary judgment sought by a defendant, the plaintiff must present evidence that would be admissible to demonstrate that he could prove every element essential to his case. Celotex Corp. v.

9

Catrett, 477 U.S. 317, 322 (1986)(Fed. R.Civ. P. 56 "mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.").

Thus, pursuant to Fed. R.Civ. P. 56, summary judgment is appropriately entered when the moving party demonstrates, by affidavit or otherwise, that there are no genuine issues as to any material fact to be resolved. See Peterson v. Lehigh Valley District Counsel 676 F.2d 81, 84 (3rd Cir. 1982); Continental Insurance v. Bodie, 682 F.2d 436, 438 (3rd Cir. 1982). An issue of fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986); Equimark Comm. Finance Company v. CIT Finance Services Corporation, 812 F.2d 141, 144 (3rd Cir. 1987). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment must be entered in favor of the movants. See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

It is axiomatic that for Garnes to prevail in obtaining summary judgment, or to defeat Fegley's motion for summary judgment, Garnes must offer some type of admissible evidence that Fegley was involved in the alleged deprivation of his legal materials. See Big Apple BMW, Inc. v. BMW of North America, Inc.,

974 F.2d 1358, 1363 (3rd Cir. 1992)(quoting Poller v. Columbia Broadcasting System, 368 U.S. 464, 473 (1962)). To defeat summary judgment, an opponent cannot merely discredit "the credibility of the movant's evidence; it <u>must</u> produce some affirmative evidence." Big Apple BMW, 974 F.2d at 1363; Id. at 1362 ("This is true even in ... cases[] 'where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.'").

No where in Garnes' affidavit does he offer <u>any</u> evidence as to whichever legal materials he ultimately was missing at some point during his incarceration that it was Fegley who prevented Garnes from receiving his legal materials. Indeed, in his complaint, Garnes seemed to be speculating that it was either Fegley or the MDC Brooklyn ISM who had sent his legal papers to his son instead of him. Regardless, Garnes has done nothing more than make conclusory statements in his brief that Fegley was the "wrongdoer." This is inadequate to defeat a summary judgment motion -- particularly when Fegley has provided a declaration stating that he did not interfere with Garnes' legal materials. Maldonado v. Ramirez, 757 F.2d 48, 50 (3rd Cir. 1985); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3rd Cir. 1972)(conclusory affidavits and factual allegations not based on personal knowledge cannot defeat a summary judgment motion).

Thus, under the rules governing summary judgment, it is Fegley that should be granted summary judgment, not Garnes.

11

B.  <u>Lack of "Actual Injury"</u>

In <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), the Supreme Court recognized that prisoners have a first amendment right of access to the courts. Subsequently, in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996), the Supreme Court clarified the parameters of the right of access to the courts -- noting that the constitutional right of access to the courts did <u>not</u> create an abstract, free-standing right for inmates to have law libraries or legal assistance. <u>Lewis</u>, 518 U.S. at 351. Further, "<u>Bounds</u> [did] not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." <u>Id</u>. at 355.

Thus, the right of access to the courts requires <u>only</u> that prisons provide inmates with the tools that they need to attack their sentences, directly or collaterally, and to challenge the conditions of their confinement. 518 U.S. at 355; <u>id</u>. ("[i]mpairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration)(emphasis in original).

Further, and relevant to this case, the Court in <u>Lewis</u> held that in order to prevail on a constitutional challenge to access to the courts, a plaintiff **must** show that he suffered an **actual injury** as a result of the alleged violations. <u>Id</u>. at 349-53. This "actual injury" requires an inmate to establish that the alleged shortcomings of the prison library or assistance program,

12

or other purported violation of the inmate's right of access to the courts, hindered his ability to pursue a legal claim. At that, the Court's holding regarding hindrance to legal claims is limited to "**nonfrivolous** legal claim[s]." Id. at 353 (emphasis added); id. at 353 n.3 (recognizing that "[d]epriving someone of a frivolous claim ... deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").

In sum, a court may not presume harm from the interference with an inmate's right of access to the courts; rather, to state a cognizable access to courts claim, a showing of actual injury is required. See Oliver v. Fauver, 118 F.3d 175, 177-78 (3rd Cir. 1997). See also Tourscher v. McCullough, 184 F.3d 236, 242 (3rd Cir. 1999)(failure of inmate to allege any facts that the number of hours he was required to work denied him sufficient time to prepare an appeal as to his conviction failed to state a viable claim of the denial of access to the courts); Martin v. Davies, 917 F.2d 336, 343 (7th Cir. 1990)(allegation of insufficient library time failed to state constitutional claim because the plaintiff failed to allege any facts that he missed deadlines and lost a case he could have won or to establish why he plead guilty to a crime he did not commit). See generally Reynolds v. Wagner, 128 F.3d 166, 182-83 (3rd Cir. 1997)(recognizing that there is no first amendment right to subsidized mail or photocopying, with Lewis requiring that an inmate making an access to courts claim demonstrate a direct injury). Moreover, the "actual injury" must

13

involve a <u>nonfrivolous</u> legal claim concerning only challenges to the inmate's conviction or his conditions of confinement. <u>Lewis</u>, <u>supra</u>.

In this case, Garnes, despite his affidavit, has not established that he experienced an actual injury to a nonfrivolous claim. Garnes simply asserts, without more, that he was unable to "properly address" his claims "pertaining to the wiretap orders, affidavits, authorizations, and sealing orders." Pl.'s SJ Br., at 7-8. Garnes further conclusorily argues that the removal of Fatico hearing transcripts prevented him from pursuing his obstruction of justice claim. <u>Id</u>. at 8. No where, however, does Garnes demonstrate the validity of his self-serving assertions.

Had Garnes truly needed to obtain documents for perfecting his appellate brief, Garnes could have moved the appellate court for an enlargement of time in which to obtain copies of the documents, which he did not do. Moreover, on or about January 31, and April 12, 2000, respectively, Garnes filed his brief and appendix and a reply brief to the Second Circuit Court of Appeals as to his §2255 appeal. In neither of these briefs did Garnes allege being denied access to his legal materials, nor did he reference an inability to adequately present his claims due to missing legal materials. (R. 35-58; 112-130.)

Additionally, a review of the government's brief filed in regard to Garnes' §2255 appeal, and of the June 29, 2000 summary order of the Second Circuit affirming the denial of Garnes' §2255 motion, establishes that Garnes' §2255 motion had no merit. (R.

14

59-111; 184-188.) In that his motion was meritless, Garnes has failed to establish an actual injury as to his access to the courts claim. Accordingly, Garnes' motion for summary judgment should fail with summary judgment granted in favor of Fegley.

As a final matter, as to Garnes' new assertions that his lack of material will hurt him in making a successive §2255 motion to raise an <u>Apprendi</u>[5] claim, that claim is premature and speculative. The Second Circuit may never reach the <u>Apprendi</u> issue if it determines, as other courts have held, that <u>Apprendi</u> does not apply retroactively.[6]

### Conclusion

For the reasons stated above, this Court should deny Garnes' motion for summary judgment.

Respectfully submitted,

MARTIN C. CARLSON
United States Attorney

*[signature]*

KATE L. MERSHIMER
Assistant U.S. Attorney
SHELLEY L. GRANT
Paralegal Specialist
217 Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108
717/221-4482

Date: June 28, 2001

---

[5] <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348 (2000).

[6] <u>United States v. Sanders</u>, 247 F.3d 139, 146-151 (4th Cir. 2001); <u>Levan v. United States</u>, 128 F. Supp.2d 270, 278 (E.D. Pa. 2001); <u>United States v. Gibbs</u>, 125 F.Supp.2d 700, 703 (E.D. Pa. 2000).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MARK GARNES,  :
       Plaintiff  :
         :
     v.  :   Civil No. 1:CV-00-0700
         :   (Caldwell, J.)
JANET RENO, et al.,  :
       Defendants  :

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on June 28, 2001, she served a copy of the attached

**DEFENDANT'S BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:

Mark Garnes
Reg. No. 24646-053
FCI Ft. Dix West
P.O. Box 7000
Unit 5811
Ft. Dix, N.J. 08640

_____
SHELLEY L. GRANT
Paralegal Specialist