UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MARK GARNES,                    :
                                :
            Plaintiff           :
                                :   CIVIL NO. 1:CV-00-0700
      v.                        :
                                :   (Judge Caldwell)
JANET RENO, et. al,             :
                                :
            Defendants          :

M E M O R A N D U M

FILED
MAR 19 2002

I. Introduction.

Mark Garnes, an inmate formerly incarcerated at the Federal Correctional Institution Allenwood ("FCI-Allenwood"),[1] filed this civil rights complaint alleging his right of access to the courts was violated by Inmate Systems Officer Charles Fegley. Plaintiff avers that Fegley intentionally deprived him of necessary legal materials preventing him from filing a complete appeal of a denial of a motion under 28 U.S.C. § 2255 Plaintiff had filed in the United States District Court for the Eastern District of New York.[2]

---

[1] Garnes is currently housed at FCI-Elkton, Lisbon, Ohio.

[2] By order dated February 15, 2001, we dismissed Garnes' three other claims, pursuant to 28 U.S.C. § 1915A, for failure to state a claim upon which relief may be granted and dismissed fourteen Bureau of Prison ("BOP") defendants. The sole remaining claim is Garnes' access-to-the-court claim against defendant Fegley alone.

Currently pending before the court are cross-motions for summary judgement filed by defendant Fegley and plaintiff Garnes. Both sets of motions for summary judgment have been briefed. Only defendant Fegley submitted a statement of material facts, which plaintiff Garnes did not counter.

For the reasons discussed in this memorandum, defendant Fegley's motion for summary judgment will be granted, and plaintiff Garnes' motion for summary judgment will be denied. Judgment will be entered in favor of Fegley and against Garnes.

II. <u>Standard of Review</u>.

The court will consider defendant's motion under the well established standard applicable to summary judgment. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Matsushita Electric Industrial Co. v. Zenith Radio</u>, 475 U.S. 574, 586 (1986). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Turner v. Schering-Plough Corp.</u>, 901 F.2d 335, 340 (3d Cir. 1990).

---

<u>See</u> doc. 11.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Young v. Quinlan</u>, 960 F.2d 351, 357 (3d Cir. 1992). After such a showing has been made, the nonmoving party cannot rely upon conclusory allegations in his pleadings or in memoranda and briefs to establish a genuine issue of material fact. Rather, the nonmoving party must go beyond the pleadings and offer specific facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial. <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990); Fed. R. Civ. P. 56(e). Further, an opposing party cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit. <u>Liberty Lobby</u>, 477 U.S. at 256-57. Therefore, when the movant has supported his motion with affidavits, the opponent "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth <u>specific facts</u> showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e)(emphasis added). If the evidence in favor of the nonmoving party is merely colorable or not significantly probative, summary judgment should be granted. <u>Boyle v. County of Allegheny</u>, 139 F.3d

386, 393 (3d Cir. 1998) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).

To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the non-movant. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. <u>Id</u>. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id</u>. at 250. If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'." <u>Matsushita Elec. Industrial Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986) (quoting, <u>First Nat. Bank of Ariz. v. Cities Service Co.</u>, 391 U.S. 253, 289 (1968)). All inferences, however, "'should be drawn in the light most favorable to the non-moving party, and where the non-moving

party's evidence contradicts the movant's, then the non-movant's must be taken as true'." Pastore v. Bell Tel. Co. of Pennsylvania, 24 F.3d 508, 512 (3d Cir. 1994),(quoting Big Apple BMW, Inc. v. BMW of N. America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)).

III. Background.

In his complaint, Garnes alleges the following. On August 11, 1998, he met with defendant Fegley in the receiving-and-discharge room at FCI-Allenwood to "pack up [his] personal and legal property" in anticipation of his temporary transfer on writ to the Eastern District of New York to argue his § 2255 motion. Garnes supposedly told Fegley he wanted his legal materials transferred with him. However, upon his arrival at the Metropolitan Detention Center in Brooklyn, New York ("MDC-Brooklyn"), his temporary place of confinement, he learned his legal materials had not been shipped with him. (Doc. 1). On or about August 26, 1998, MDC-Brooklyn did receive Garnes' personal property but the legal material was "only [one] legal folder." (Id.)

Garnes then requested assistance from Brooklyn unit manager, Mr. Baggot, to obtain the balance of his legal materials from FCI-Allenwood. Baggot telephoned Fegley and asked that he forward the

remainder of Garnes' legal property to MDC-Brooklyn. Fegley indicated he would ship the requested materials.

When the property was not received, Baggot again contacted Fegley and learned that MDC-Brooklyn had indeed received the packages, but for some unknown reason, had returned them. Baggot requested that the property be sent again. After a period of time passed without Garnes receiving his property, Plaintiff learned that Fegley allegedly found contraband in his property, and as a result, someone at either FCI-Allenwood or MDC-Brooklyn, had mailed his property to his eldest son, T. Williams. Garnes did not authorize anyone to send this property to his son. (Id.) Garnes claims the only time he authorized defendant Fegley to send property to his son was on August 11, 1998, the day he packed his property to go on writ.

Garnes claims the legal materials he needed "to fully execute [his] appeal with all issues included," were not found in the property sent to his son. (Id.) He claims his right of access to the courts was violated when "plaintiff's property, significantly his legal property was mailed home without his permission, depriving him to continue his litigation adequately and replete with all issues relative to his 28 U.S.C. 2255 and civil matters,

-6-

these rights being deprived by the 'ISM' staff at Allenwood and MDC-Brooklyn." (Id. at p. 15).

To pierce these allegations, defendant Fegley has submitted a statement of material facts, supported by affidavits and documentation, which recite a materially different story. According to Fegley, on August 11, 1998, Garnes met with him to pack his personal and legal property in preparation for his temporary transfer to MDC-Brooklyn. Fegley inventoried Garnes' property, in his presence, and made a record as to the inmate's election as to the disposition of each item. Garnes opted to have most of his property, including his legal materials, stored at FCI-Allenwood. (See Record in Support of the Defendant's Motion for Summary Judgment, Doc. 22, Declaration of Fegley, R. 10; and Garnes' Personal Property Record of August 11, 1998, R. 24). Garnes also chose to have a few reading books and photo albums shipped to his son, T. Williams. (Doc. 22 at R. 24). Garnes then signed the property inventory sheet verifying the accuracy of the indicated disposition of the listed property. (Id.)

After Plaintiff was transferred to MDC-Brooklyn, Fegley was contacted by Garnes' MDC-Brooklyn Unit Manager, Mr. Baggot, and requested that he forward Garnes' legal materials to MDC-Brooklyn.

Out of an abundance of caution, on August 27, 1998, Fegley mailed all of Garnes' stored property, which included his legal materials, to MDC-Brooklyn. (Doc. 22 at R. 11 and 26). Fegley modified Garnes' original inventory sheet to reflect what property he sent to Garnes and that the shipment was at the inmate's request. (Id.)

On September 3, 1998, MDC-Brooklyn received all of the property shipped by Fegley. MDC-Brooklyn officials completed another Personal Property Record indicating Garnes received, and took possession of, eighteen inches of legal materials. The remainder of Garnes' property was returned to FCI-Allenwood. (Id. at R. 30).

In mid-October 1998, Fegley was again contacted by someone at MDC-Brooklyn requesting that Garnes' property be returned. However, Fegley was not involved in the handling of Garnes' property after mailing it to him in August 1998. (Doc. 22, R. 12-13). Defendant, however, submits additional documents secured from MDC-Brooklyn related to Garnes' disposition of personal, and legal, property while on writ. In March 1999, and then June 1999, while at MDC-Brooklyn, Garnes requested to have legal materials, selected by him, sent to his son. (Doc. 22, R. 32 and 34). Garnes returned to FCI-Allenwood on August 19, 1999. (Id. at 6).

To address Garnes' claim that Fegley's interference with his legal materials caused him injury with respect to his § 2255 appeal before the Court of Appeals for the Second Circuit, Fegley submits copies of Garnes' brief, appendix and reply brief filed with that court. (Id. at RR. 35-58; 112-130). Nowhere in Garnes' documents before the Second Circuit does he allege he is being denied access to necessary legal materials. Nor does Garnes reference an inability to adequately present his claims due to alleged missing legal materials. Defendant has also submitted the Second Circuit's five-page, unpublished rejection of Garnes' 2255 appeal. (Id. at RR. 184-188).

In his opposition material, Garnes acknowledges he received eighteen inches of legal materials at MDC-Brooklyn, (doc. 23, Garnes' Declaration, ¶4; docs. 29 and 30), but maintains that some material essential to filing a complete § 2255 appeal, was missing from the property he received. In his briefs, he specifically mentions that the missing material was part of the record in his underlying criminal case: "Wiretap orders, Authorization Applications, Sealing Orders, Transcribed Transcripts of each wiretap telephone call, Suppression Hearing Transcripts, Fatico Hearing Transcripts, Indictment, Docket Sheets, various pretrial

-9-

motions, and other tidbits of legal documents." (Doc. 23, Plaintiff' affidavit at ¶ 10). He claims Fegley is responsible for intentionally depriving him of this property. He also asserts that the missing material has adversely affected an <u>Apprendi</u> claim he is raising now with the Second Circuit.

Garnes then goes on to informally request the opportunity to conduct discovery to support his assertions as to defendant Fegley's involvement.[3] (Doc. 30, p. 4). Garnes speculatively asserts that Fegley "refused to" forward the remaining six inches of legal materials to plaintiff at MDC-Brooklyn. (Doc. 29).

---

[3] Notably, this is the first time Garnes has mentioned the need to take discovery in this matter. Specifically, he seeks leave to depose BOP staff and obtain copies of the Receiving and Discharge "Logbook with the Mailroom" which "<u>may</u> indicate the responsible party, <u>should it not be defendant</u>." (Doc. 30, p. 4) (emphasis added). Aside from casting significant doubt on Garnes' ability to tie Fegley to his loss of legal materials, Garnes' request to conduct discovery to resolve this matter is long past. Garnes has not stated, or otherwise produced any evidence to suggest, that prior to now he was unable, or otherwise hampered, in conducting discovery in this matter. Garnes offers no explanation why he could not during the discovery period pose interrogatories or requests for the production of documents to defendant to obtain the requested information to find "the responsible party" or to pinpoint Fegley's period of involvement with his property. Therefore, Garnes' informal request for discovery will be denied.

-10-

IV. <u>Discussion</u>.

"[P]risoners have a constitutional right of access to the courts." <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977). In order to state a claim for denial of this right, an inmate must plead that he has suffered an "actual injury" arising from the challenged conduct of prison officials. See <u>Lewis v. Casey</u>, 518 U.S. 346, 348-49 (1996). "Actual injury" is established by showing that litigation such as a direct appeal from conviction, a habeas petition or a civil rights action was frustrated or impeded and that the thwarted action was non-frivolous. <u>Id</u>, 518 U.S. at 353-54. The deprivation of personal files alone does not fulfill the "actual injury" requirement. The deprivation must be intentional and frustrate a non-frivolous action. Furthermore, a court may not presume harm from the interference with an inmate's right to access the courts; rather, to state a cognizable access-to-the-courts claim, a showing of actual injury is required. See <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997).

Based on the undisputed facts presented by the defendant, plaintiff has failed to present evidence from which a reasonable jury could find defendant Fegley responsible for the alleged six inches of missing legal materials, or that Garnes suffered the

-11-

requisite "actual injury" necessary to support an access-to-the-court claim as a result of Fegley's alleged wrongdoing.

    A.  <u>Garnes' Failure to Establish that Fegley Failed to Forward Legal Material</u>.

Accepting Garnes' claim that some of his legal materials were lost or intentionally kept from him, Garnes provides no evidence, other than his own speculative statements, that defendant Fegley is the responsible party.

The undisputed record shows prior to his transfer to MDC-Brooklyn, defendant Fegley inventories Garnes' property, including his legal materials. Fegley noted Garnes had approximately twenty-four inches of legal materials at that time that he elected to have stored at FCI-Allenwood. (Doc. 22 at R. 24). After Garnes' transfer to MDC-Brooklyn, defendant Fegley (at Garnes' request), forwarded all of his property, including all of his legal materials, to him at MDC-Brooklyn. (<u>Id</u>. at R. 26, 28). Fegley then obtained, and retained, eighteen inches of legal materials from his property. (<u>Id</u>. at R. 30). In mid-October, defendant Fegley was contacted again by MDC-Brooklyn to forward Garnes' material to him. However, Fegley does not recall personally being involved with re-mailing plaintiff's property, or handling his property at all,

-12-

after August 1998. (<u>Id</u>. at R. 12-13).

Garnes has not provided any evidence, outside of his own conclusory statements, to contradict these facts. Nothing Garnes has submitted remotely suggests Fegley is responsible for the loss of any property. He does not provide any facts to demonstrate Fegley removed any legal material from his property at any time, intentionally or otherwise. Other than his own speculation as to Fegley's culpability for this alleged loss, Garnes fails to provide any facts from which a reasonable jury could conclude Fegley is the party responsible for the alleged loss of legal materials. Without more, summary judgment must be granted in Fegley's favor.[4]

Underscoring Garnes' inability to tie Fegley to the property loss is his request to conduct discovery to root out the "responsible party, <u>should it not be defendant</u>." (Doc. 30, p. 4). Thus, Garnes himself suggests Fegley may not be the party

---

[4] Notably, Garnes does not claim that defendant Fegley intentionally took his legal materials within his sworn affidavit. (Doc. 23, Garnes Affidavit). Even if he had, this conclusory statement alone would not create a material dispute of fact. This is insufficient to defeat defendant's motion for summary judgment as conclusory affidavits lacking specific facts may be disregarded by the district court. <u>Shaw v. Strackhouse</u>, 920 F.2d 1135, 1144 (3d. Cir.1990), citing, <u>Maldonado v. Ramirez</u>, 757 F.2d 48, 51 (3d Cir.1985).

-13-

responsible for losing his legal materials.

    B.   <u>Plaintiff's Failure to Demonstrate Actual Injury</u>.

To succeed on his access-to-the-courts claim Garnes must show he suffered actual injury, not just the inference or possibility of injury, in his pursuit of a nonfrivolous legal claim. <u>Lewis</u>, 518 U.S. at 349-53; <u>Oliver</u>, 118 F. 3d at 177-78. Garnes has not established that he suffered an actual injury with respect to his § 2255 appeal because he did not have the critical legal materials.

Although Garnes claims that he was unable to appeal or properly raise and address claims in his § 2255 appeal, this assertion is not supported by the evidence of record. A review of his appellate documents reveals that Garnes never pled, nor otherwise alleged, he was being denied access to necessary legal materials. Nor is there evidence to suggest Garnes sought an enlargement of time from the Second Circuit to obtain essential legal documents necessary to "fully litigat[e]." It is also significant Garnes never filed a motion asking the government to supply him with copies of the allegedly missing documents while the action was pending in the district court if he felt they were absolutely essential. Further, Plaintiff never specifically argues

-14-

how the missing documents adversely affected his 2255 appeal. Moreover, the Second Circuit's disposition of that appeal gives no hint as to why those documents would have been relevant.

We will issue an appropriate order.

                                         /s/ William W. Caldwell
                                         WILLIAM W. CALDWELL
                                         United States District Judge

Date: March 19, 2002