ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

NOV 21 2002

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

Mark Garnes,
    Plaintiff/Petitioner

v.

Janet Reno, et al.,
    Defendants.

Civil Action No.: 00-CV-0700 (WWC)

## MOTION FOR PRELIMINARY INJUNCTIONS

**COMES NOW**, Mark Garnes, Plaintiff, Pro Se, hereby moves the Honorable Court, respectfully, hereto requesting for preliminary injunctions thereof defendants named and to be amended therein Motion to Amend pursuant to Rule 15 of the Federal Rules of Civil Procedure.

That injunctive relief is granted to preclude named defendants from further actions thus taken and to be taken, plausibly. This is due to the constant harassment, retaliation, transfers, being detained in the Segregation Housing Unit (Administrative Detention) without procedural due process, intentionally to disrupt Plaintiff's filing grievances and litigation relevant to the actions herewith.

This preliminary injunction relates to the request therein the Complaint at 16-17(a-e). It is here now, that Plaintiff fears for life, liberty, and property due to the continuous actions taken against Plaintiff since the filing of the Complaint in April 200' as delineated herein the attached Motion to Amend.

Plaintiff prays the Honorable Court shall grant the ORDER for Preliminary Injunction accordingly.

# PROPOSED
## PRELIMINARY INJUNCTIONS

Petitioner respectfully request here, purusant to Rule 48, a "Special Master" be appointed to assist in procuring the facts, evidence, oaths, examining witnesses. To which, Petitioner's abilities to conduct such affairs in support of preparing for a jury trial or preliminary hearings are hindered due to imprisonment. Offender's Rights, Standard 2.18(2)(c).

Petitioner request, respectfully, for Preliminary injunctions, permanent injunctions to be imposed in the following manners, to protect Petitioner's life, liberty, and property.

1. An ORDER permitting Petitioner to remain legally unassigned from work details, which has thus far interferred with research, preparation of litigation, conjoined with fact of transfers.

    Offender's Rights, Standard 2.9(3)(c);(6); Standard 2.8(1);(2); Standard 2.13(1)(e);(2-4)

2. An ORDER permitting Petitioner to utilize the legal law library upon opening til closing each day of the week and weekend, to access the courts with litigation.

    Offender's Rights, Standard 2.1(1-6): Standard 2.2; Standard 2.3; Standard 2.4; Standard 2.14; Standard 2.15; Standard 2.16 (Petitioner has incurred impedings with religious diet here at FCI Cumberland); Standard 2.17; Standard 2.18.

3. An ORDER granting Petitioner to be transferred to MDC-BROOKLYN (Cadre) pursuant to Rule 23(a), considering Petitioner was litigating the appeal of 28 U.S.C. § 2255, here now the Writ of Certiorari/Extraordinary Writ frustrated due to FCI Fort Dix not forwarding the Court of Appeals for the Second Circuit's Summary Order to the transferring facility. In conjunction with Rule 36 of the Supreme Court Rules, in addition to current litigation here- with, Rule 60(b) recently revisited by district court.

3

## STATEMENT OF THE FACTS

Petitioner submits herewith, per attached affidavit, that furtherance of constitutional violations seems to be incessant due to the Complaint filed against the defendant's named therein.

Petitioner has incurred placement in segregation housing units ("SHU") on false allegations disproven, only to be transferred thereafter. Detainment here mentioned at FCI Fort Dix, where upon placement in SHU at FCI ELkton was merely concocted to deter Petitioner from filing greivancs relevant to property missing, to which, Counselor Smith's "labelling" Petitioner a "pest and nuisance" amongst staff members posited harassment and further violations of Petitioner's constitutional rights.

This harassment and infringement of rights delegated Petitioner, irregardless of imprisonment has spilled over to FCI Cumberland. In which, these incidences are relevant to frustrate, discourage, Petitioner from filing grievances and litigation, all in which is retaliatory for inquiries to property misplaced/lossed there upon transferring from FCI Allenwood on April 12th or 15th, 2000, plausibly filing of Complaint unto B.O.P. staff.

Petitioner has appended exhibits illustrating these instances, with the exception of FCI Fort Dix, which Petitioner has requested for the documents thereto.

These instances occurred in the following order, supportive herewith exhibited documents as outlined therein Motion to Amend.

4.  An ORDER permitting the Bureau of Prisons allow Petitioner to copy all litigation without charge pursuant to Policy Statement 1315.07(7)(g), without charge.

5.  An ORDER restraining Defendants named and amended herewith, there in accord to Complaint, at 16(b), harassing, retaliating against Petitioner for filing of claims.

6.  In the event Petitioner is detained in SHU, the court (District Court) is notified thereby Special Master or correspondence. In addition, that Petitioner's property is procedurally processed without tamperings, confiscations, or otherwise beyond policy. Thus by Order to Custodian.

Petitioner asserts here that a permanent injunction hereto the aforementioned is duly necessary to which the on-going incidents with Bureau of Prisons staff seems to be carrying over to each transferring institution. Obviously, there is line of communication being transposed, whether from Petitioner's inquiries, commencing there at FCI Fort Dix, thereafter, at FCI Elkton, Petitioner has ceased to request or inquire as to property, however, that has not precluded staff mentioned here at FCI Cumberland from initiating and continuing harassment, frustrating Petitioner's legal endeavors to access to the courts.

These contentions can only be proven as noted by the facts of which have been exhibited therewith Petitioner's Motion to Amend. Prior to this initial incident there at FCI Allenwood, Petitioner had not incurred instances of this magnitude, being transferred to three institutions within a span of less than three years, two of which occurred within less than a year, prior to filing the Complaint or accusations which caused submission.

Petitioner prays the Honorable Court grant Preliminary Injunction.

4

## ARGUMENT

The Honorable Court of Appeals for the Third Circuit has premised preliminary injunction.  <u>Instant Air Freight Co. v. C.F. Air Frieght, Inc.</u> 882 F. 2d 797, 799 (3rd Cir. 1989).

The Third Circuit has set forth requirements to obtain a preliminary injunction, which provides:

> "(1) the reasonable probability of eventual success in the litigation and (2) that the movent will be irreparably injured pendente lite if relief is not granted. Moreover, while the burden rests upon the moving party to make these two requisite showing, the district court "should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."

<u>Instant Air Freight Co. v. C.F. Air Frieght, Inc.</u>, 882 F. 2d 797, 800 (3rd Cir. 1989).

Petitioner submits here these two requirements are afforded herewith the instant case, in which, Petitioner's litigation to the United States Supreme Court, Court of Appeals prior to has been impeded as a result of lost property. In addition, fact that FCI Fort Dix did not forward the Summary Order relevant to Petitioner's Request for Leave to File a Second Motion pursuant to 28 U.S.C. § 2255 delayed the filing of Petitioner's Writ of Certiorari/Extroardinary Writ. Which the Court of Appeals for the Second Circuit was contacted via correspondence and Petitioner's family. The Appellant Brief evinces these constitutional violations were indeed retaliatory. Considering the probability for success herewith the litigation pertaining to the issues/

claims of the Complaint, rest within the Honorable Court.

Clearly, Petitioner has suffered a great deal of emotional stress with the harassment; detainment in SHU; transfers; denial of religious practices; denial of access to the court; incurring on-going acts by Bureau of Prisons staff relevant to litigation, thus encountered cannot in any manner, morrally be compensated. Should such actions by defendants or staff associated herewith the Bureau of Prisons not cease, furbher burdens of stress, expenses for litigation being submitted, plausibly loss of property, liberty, and life. It is documented that prisoners have been set-up/framed by inmates and staff alike, resulting in retaliatory actions. It is here that injunctive relief should be granted. <u>Instant Air Freight Co.</u>, 882 F. 2d at 800. "We have often recognized that the grant of injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances.""

A substantial likelihood of success rest herewith the merits therein the Complaint, Appellant Brief, with supporting Affidavits. Considering the litigation before the United States Supreme Court is not granted (Motion for Leave To Waive Time Requirements To File Petition for Writ of Certiorari), this denial in itself cast upon petitioner an irrevocable opportunity to address the issues therefrom the initial 28 U.S.C. § 2255. With the All Writs Act, 28 U.S.C. § 1651 available to Petitioner, the issues raised on 2255 and Appeal can only be submitted with a showing of 'actual innocence.'

Petitioner has been transferred further from home on these occasions, distressful sufferings upon Petitioner, his

6

children, family, love ones and friends, who visited while Petitioner was housed at FCI Fort Dix; FCI Allenwood; USP Lewisburg; and MDC-Brooklyn while detained on writ. Petitioner has not received visits as a result of these transfers, children of Petitioner has been burdened moreso, Petitioner, who is a grandfather of recent, has been unable to have grandchild visit with children, depriving Petitioner of those early infancy moments which are irretrievable.

Certainly, Petitioner is unable to redress matters of the aforementioned by a legal or an equitable remedy following a trial. Id. at 801.

## CONCLUSION

Petitioner prays the Honorable Court will consider and grant preliminary injunctive relief here requested and as the Honorable Court deems just and proper.

Respectfully submitted,

*Mark A. Garnes*

DATED.: October 13th, 2002
Cumberland, Maryland

Mark A. Garnes - Pro Se
Reg. No. 24646-053
P.O. Box 1000-A1
FCI Cumberland
Cumberland, Maryland
21501

7

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Mark Garnes,                          :
    Petitioner,                   :
                                  :
    v.                            :      02-1910
                                  :
Janet Reno, et al.,                   :
    Respondent.                   :

................................................................

## AFFIDAVIT

    I, Mark Garnes, Petitioner, Pro Se, hereby swear under penalty of perjuy and oath, deposes and says:

1. I was transferred from FCI Allenwood on or about April 13th, 2000, to USP Lewisburg, to which I was held in holdover status til April 18, 2000, where I was then transferred to FCI Fort Dix, in Fort Dix, New Jersey.

2. Upon receipt at FCI Fort Dix, I requested/inquired about property to be forward by FCI Allenwood, which had not been received at or by FCI Fort Dix's Receiving and Discharge Staff/Department. These requests/inquiries were continuance, to no avail, from about April 25, 2000, thereafter on subsequent occasions and transfer to FCI Elkton.

3. On June 29th, 2001, I was detained in Administrative Segregation there at FCI Fort Dix for an investigation. Presumption, Leads me to believe this matter was concocted by Captain Mioriani [sic], due to consistent requests/inquiries regarding property.

4. Upon transferring to FCI Elkton, I continued to inquire as to property yet received therefrom FCI ALLENWOOD. These inquiries were addressed to Unit BB Counselor Deborah Smith; SIS Lieutenant's Office; and Assistant Warden of Operations, Mr. Montalvo. No responses were afforded thereto these requests, in which, I was thereafter "labelled" a "pest and nuisance" by Counselor Smith. Ms. noting that I should forget about the property.

5. On February 20, 2002, I was placed in administrative segregation, pending disciplinary hearing for an infraction received therefrom Unit BB Case Manager Sweeney. To which, the Disciplinary Hearing Officer dismissed two of the charged offenses, placing the third in suspension pending clear conduct for six months. I explained these acts were concocted due to my continuous requests for property, harassment by staff, and retaliation for my litigation. Where Assistant Warden Montalvo ordered my detainment. To which I was released on April 3, 2002, resulting from Assistant Warden Montalvo not showing as witness to the matter. I was given a Unit Change to Unit FB, this is presumed to deter me from pursuing issues relevant to property and grievances submitted or endeavored to be sumitted.

6. Upon attending Unit Team Meeting thereon or about or about July 2nd, 2002, I was not advised of an impending transfer, only to maintain clear conduct and enroll in a fitness class. Presumption here is due to my inquiries to property, grievances submitted, herewith litigation to be frustrated.

7. On July 15, 2002, I was transferred to the Oklahoma Transfer Center in Oklahoma City, Oklahoma, til August 5, 2002, where I was transported to FCI

Cumberland. In order for this transfer to occur, my security level was increased without justification, in accord to sound reasons. I was increased based on a Greater Security Management Variable, which was not used to maintain my security level there at FCI Allenwood, a medium secuirty facility as here with FCI Cumberland. This security level increase was manufactured in retaliation for my filing litigation, grievancs, inquiries to property.

8. Here now, at FCI Cumberland, it seems obvious from Counselor' Sines response on my grievance, indicates Ms. SInes has contacted staff beyond the confines of FCI Cumberland or staff has contacted her from another facility. To which, I placed an approved request for detail assignment in the law library as a law clerk, in Ms. Sines hands for computing and assignment. Thereafter, Ms. Clifton, the Supervisor for the Education Department, upon my inquiry, stated she did not need me. Upon further inquisition, Ms. Clifton averred that she was contacted by Ms. Sines and that I was not needed as a clerk. Some days later, on or about August 20, 2002, I was summoned to the Lieutenant's Office, where SIS Officer, Ms. Lichter advised my photos were to be taken, upon inquiring as to why, Ms. Lichter advised I had compromised staff in previouseinstitutions.

9. I have verbally and written requests for legal idle to conduct my litigation to the courts, this matter has been denied without appropriate approval from the courts, documented. In addition, I have requested to remain unassignedthis has been denied. I submit, this will be the only way for me to complete the volume of litigation currently before the various courts pertaining to my civil action here, conviction and sentence, with civil matters included other than herewith.

10. While housed at FCI Fort Dix, I requested the assistance of the following staff regarding my property: ISM Staff, Mr. Prince, Ms. Adams; CMC Mr. Donahue; Counselor Luis Reyes, Counselor Steele (A&O Counselor); Counselor Smith; Captain Mioriani; Warden Bailey. It is Captain Mioriani whom I gave more attention towards this matter, due to Captain Mioriani being formerly staffed thereat FCI Allenwood.

11. This being the second incident relevant to my property seems to have ignited ill behavior to persuade me from inquire, it is Captain Mioriani with SIA O'Dell, who escorted me to the Segregation Housing Unit thereon June 29, 2001. It is Captain Mioriani who addressed the matter of refusal to take food trays thereafter the tampering and pebbles found and chewed by me while housed in SHU. Where upon receiveing an infraction for refusing an order, Lt. Nesbitt, the SHU Supervisor declared me on a food strkke, this seemingly concocted to force me to eat the food trays thus refused. In which, Unit Manager Carroll sanctioned me to 30 days no commissary and 30 days no visits. Presumed to be intentional due to my opting to eat commissary purchased items and items therefrom the vending machines in the visiting room.

For the reasons set forth here, Petitioner prays the Honorable Court herewith consider these attestments upon reviewing the Complaint, with Motion to Amend, Rule 15, and the Motion for Preliminary Injuctions.

DATED: September 10th, 2002
Cumberland, Maryland

Mark A. Garnes - Pro Se
Reg. No. 24646-053
P.O. Box 1000-A1
FCI Cumberland
Cumberland, Maryland
21501

## CERTIFICATE OF SERVICE

I, Mark A. Garnes, Petitioner/Plaintiff, Pro Se, hereby swears under the penalty of perjury pursuant to 28 U.S.C. § 1746, that I have for to the Clerk of the Court four copies of Plaintiff/Petitioner's Motion Pursuant to Rule 15 and Motion for Preliminary Injunction with appended Affidavits to each and enclosed therewith, Petitioner's Exhibits. Each of which has been forward to the Court Clerk. This matter in addition, with a courtesy copy has been forward to opposing counsel. However, Petitioner/Plaintiff has not included the additional copies for named persons to be amended pursuant to Rule 5(c) of the Federal Rules of Civil Procedure.

MAILED TO:

| | |
|---|---|
| Clerk of the Court<br>United States District Court<br>Middle District of Pennsylvania<br>P.O. Box 983<br>228 Walnut Street<br>Harrisbur, Pa.   17108 | Kate L. Mershimer, AUSA<br>United States Dsitrict Court<br>Middle Distirct of Pa.<br>Room 217, Fed. Bldg.<br>228 Walnut Street<br>Harrisburg, Pa.   17108 |

DATED: October 14th, 2002
Cumberland, Maryland

Mark A. Garnes - Pro Se
P.O. Box 1000-A1
Reg. No. 24646-053
FCI Cumberland
Cumberland, Md.   21501