ORIGINAL

50

11/22/0

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG, PA

NOV 21 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

| | | |
|---|---|---|
| Mark Garnes, | : | |
|     Plaintiff/Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 00-CV-0700 |
| | : | (WWC) |
| Janet Reno, et al., | : | |
|     Defendants. | : | |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## MOTION PURSUANT TO RULE 15

**COMES NOW**, Mark Garnes, Plaintiff/Petitioner, Pro Se, hereby moves the Honorable Court, respectfully, pursuant to Rule 15 of the Federal Rules of Civil Procedure, thus, permitting Petitioner to amend the Complaint, therewith the inclusion of defendants hereto be named therewith claims/actions relevant to the matter here before the court, relevant to Rule 15(c).   Petitioner has appended evidence herewith to outline the actions taken against Petitioner pursuant to Rule 15(b).   This matter here now stems from the Complaint filed thereon April 10th, 2000.

For the reasons to be set forth below, Petitioner prays the Honorable Court here shall grant the Amending Complaint in the interest of justice.

## STATEMENT OF THE FACTS

Submission here derives from incessant infirmities derived therefrom the Complaint's initial claims.   This presumption is due to property not received upon transferring from FCI Allenwood on April 15, 2000.

1

To which, Petitioner submittted inquiries pertaining to property therefrom FCI Allenwood.  See Affidavit.

In short, Petitioner held unto Captain Mioriani [sic] there at FCI Fort Dix, to possibly locate said property.  This request is due to Captain Mioriani being formerly staffed there at FCI Allenwood prior to FCI Fort Dix.  However, after continuous requests, to no avail was the property of Petitioner located, to date, staff mentioned therein the Affidavit or otherwise has been able to locate property.

On June 29, 2001, per Captain Mioriani and Special Investigation Agent O'Dell ("SIA") orders and escorting Petitioner to the Segregation Housing Unit ("SHU"), administrative detention for an investigation for misconduct with staff.  Subsequently, this matter was disproved.  There was no formal hearing as to ascertain placement in SHU, no Segregation Review Officer reviewed Petitioner's status, nor notified detainment in SHU.

SIA O'Dell suggested accusations that were false, noting, Petitioner was video-taped engaging in misconduct with staff.  It is here that Petitioner posits investigation was a ruse to detain Petitioner, thereby frustrating inquiries to property and the litigation before the Courts.

On or about July 3, 2001, Petitioner chewed on pebbles (stone) therefrom food tray.  Filing grievance to this matter, holding SHU Lieutenant Thomas Nesbitt (Lt.) responsible. Grievances were filed addressing this matter.  Thereafter, Petitioner opted to eat only edible items purchased from the canteen.  Subsequently missing several meals served, Petitioner was summoned to SHU Lt. Nesbitt's office, to which, Lt. Nesbitt

inquired as to Petitioner not taking the food trays.   Explaining

fear of being food poisoned; glass in food; or otherwise.   Lt.

Nesbit stated Petitioner must take something from the food tray

(i.e., fruit, vegetables, etc.) so as not to be placed on hunger

strike status.   Petitioner complied.   Thereafter, Petitioner

not being a flesh eater (vegetarian), due to religious diet, food

trays with meat contained were endeavored upon Petitioner.   ...

Refusing again the food trays thereafter, grievances filed

accordingly.   Petitioner opted to remain with purchased items

from the commissary.   Soon after, Captain Mioriani advised

Petitioner, upon being summoned to the SHU Lt.'s Office, where Lt.

Nesbitt had slipped out of one of two doors while Petitioner

entered, requested of Petitioner to participate in eating the food

trays.   Petitioner explained the issues concerning the food

trays.   Captain Mioriani stated he would look into the matter,

that I should take the food trays.   Petitioner complied.

This matter of food tampering continued, on or about August

10, 2001, Petitioner was summoned to Lt. Nesbitt's office

regarding the food trays, Petitioner advised the SHU Officers,

with written declaration to Lt. Nesbitt that he waived the request

to be summoned.   Subsequent to this, Petitioner was video taped

by SHU Officers with Lt. Nesbitt escorting Petitioner to a "dry

cell" due to Lt. Nesbit placing Petitioner on "hunger strike"

status.   Lt. Nesbitt failed to follow procedures, in that,

Petitioner advised Lt. Nesbitt a food strike or hunger strike was

not in order, Petitioner opting to eat commissary purchased

items as opposed to food trays.   Policy notes that medical

staff is to determine whether an inmate is on a hunger strike, not

Lt. Nesbitt.

An infraction was submitted in relation to this incident, to which, Petitioner was charged with Disobeying a direct Order, sanctioned by the Unit Manager, Michael Carroll to 30 days no commissary and 30 days no visits.   Each of these sanctions not permitting Petitioner to eat at his choice, declining the food trays.   This sanction imposed was deliberate to compel Petitioner to eat the food trays.   Petitioner declined.

On occassions, Assistant Warden of Operations and the Duty Officer, Mrs. K. Morton attempted to persuade Petitioner to eat the food trays.   Petitioner declined.

Upon seeing the physicians, explaining there was no food strike, that Petitioner opted to eat commissary items purchased. Physicians agreeing Petitioner was not on hunger strike, however, the matter was out of their hands.   Petitioner agreed to the prescribed Ensure by the physicians.

Petitioner had requested of Unit Manager Michael Carroll, that the infraction, refusing to handcuff need to be investigated, in which, Mr. Carroll retorted, 'I have investigated it, you're guilty of the offense as the officer has written."   Attempting to explain this actions were retaliatory for my filing grievances on Lt. Nesbitt and officers concerning the food trays, Mr. Carroll dismissed these allegations.

These food tray refusals continued til Petitioner was transferred thereon October 30, 2001.

During the detainment, mentioned above, Petitioner's property, therefrom the Unit, 5811, had not been given to Petitioner during these noted periods (June 29 - October 30, 2001).   Request to SHU Property Officers Dawson and Boomer were

referenced to Captain Mioriani.   In which, Petitioner was allowed
to receive only hygenic items, radio, shower slippers, and novels.
The legal work removed, belonging to an inmate, James Culp, was
removed an given to that inmate by Officer Dawson.   Petitioner
was not permitted to remove any other property therefrom.   On
several occasions, Petitioner requested possession of certain items,
only to be denied.

Petitioner was advised by SIS Property Officer Miele, that
property was being returned, thereon or about August 9, 2001.
However, Petitioner was not permitted to physically procure this
property, it remained stored.   Officer Miele, spreaded all
property before the assigned cell, that which was being
confiscated was being returned.   Petitioner signed the property
confiscation forms, believing the property was being returned,
it was not all returned.   Petitioner requested to have property
investigated, that missing and returned.

Petitioner was transferred thereon October 30th, 2001 to
USP Lewisburg for one night, following day to Metropolitain
Detention Center in Brooklyn, New York ("MDC-NY"), where
Petitioner remained til on or about November 21, 2001.   Being
bused to Stewart's Airforce Base to be airlifted to Pittsburgh,
Pennsylvania, therefrom, bused to FCI Elkton in Lisbon, Ohio.

Petitioner was returned to MDC-NY til December 5, 2001.
UPon inquiring why this airlift did not transport Petitioner to
next designation, the transport officer or Receiving and Discharge
staff at MDC-NY could answer knowingly, it was beyond each.

Upon being received at FCI Elkton, thereon December 5,
2001, Petitioner, soon after receiving property from FCI Elkton

Petitioner noted to C.O. Walker, Property Officer therein R & D, that property was missing.  In addition, that property hereof being itemized was not totally Petitioner's.  Property belonging to inmate Larry WIlliams, Reg. No. 03426-087, was included therein Petitioner's property.  Refusing to sign the property forms, C.O. Walker advised the property would not be acquired should Petitioner not opted to sign.  Petitioner signed with C.O. Walker listing only the Boots as missing, no other items, nor the property belonging to another inmate.  Which, Petitioner proposed to Counselor Mraulak to have the property given to the named inmate, who was formerly of FCI Fort Dix, now housed in SHU at FCI Elkton.   Counselor Mraulak provided this inmate with the property.

Thereafter, Petitioner sought the assistance of Counselor Deborah Smith as to the missing property.  Filing a request form to the SIS Staff per Ms. Smith's suggestion, with a grievance to address the matter.  Counselor Smith stated she would phone each institution and see what she could do.  Each submission here mentioned was ignored, Petitioner's request sailed upon closed minds.  Petitioner was titled a "pest and nuisance" soon after consistent inquiries.

Petitioner received harassment from the staff at FCI Elkton, specifically, being placed in Construction and Mechanical Services, deliberately.  To which, Petitioner had submitted a request to Captain Kryer, who advised she would place Petitioner at a job detail that would not interfere with Petitioner's morning and afternoon prayers.  Greivances were filed as to this job detail[1] infringing upon Petitioner's right to practice religious tenets

in addition to the harassment.    Counselor Smith circumventing these grievances with executive staff denoting the grievances as untimely.

Procuring an approved request for job assignment on the Evening Shift of the Captain's Detail by Supervising Officer, Mr. Buse, this request was circumvented  by Captain Kryer, Lt. McCannis, and Job Placement/Assignment Counselor Devivo.    This matter was addressed on grievances.

Seemingly, Counselor Smith had conferrred with staff or staff sought Ms. Smith as to Petitioner's position as an inmate at FCI Elkton.    Thus, precluding Petitioner from exercising rights entitled.    Petitioner's persistent inquiries as to property had labelled Petitioner as a "management problem" therewith filing of grievances.

On February 20, 2002, Petitioner was detained in SHU, due to refusal of participating in a Town Hall Meeting that was not mandatory.    This detainment was authorized by Assistant Warden Montalvo, who held the meeting.    Presumely, this detainment stemmed from Petitioner's inquiries as to property thereto the assistant warden, who, as operations supervisor of the facility covered this area of concern.    Coupled with the fact Case Manager Sweeney, Ms. Smith's colleague therein Unit BB encouraged this detainment thereby discussions, moments prior to Mr. Montalvo's authorizing.

While detained in SHU, Petitioner was not permitted to possess religious prayer book.    In addition, Chaplain Cozzens placed a religious pamphlet necessary for PASSOVER under the cell door, which was inundated with urination and defecation.

Chaplain Cozzens attempted to avoid this matter thereby refusing to sign off on the grievance.  Petitioner followed up with additional grievance.

During the period detained in SHU, Petitioner sought the continued assistance, which had not been previously provided by Counselor Smith, to grieve the matters thereof detainment in SHU therewith further issues, relevant to prayer book being denied, placement in SHU, discrimination, and staff negligence, property, and detail assignments.

Upon held hearing thereof the charged infraction, the Disciplinary Hearing Officer dismissed two of three charges, with remaining offense suspended for six months pending Petitioner's clear conduct, with quarter change.  Seemingly, the DHO was familiar with the brewings thereby counselor Smith and Unit BB Staff.

However, upon release from SHU thereon April 3, 2002, Petitioner pursued the matters aforementioned.  Unit Manager Milton, thereof Unit FB endeavored to continue Counselor Smith's circumvention.  Delaying Petitioner's filing grievances, referrring Petitioner to the Psychology Department, implying mental imbalance thereof Petitioner.  Psychology noting there was no mental instabllity therewith Petitioner.

Petitioner thus received further harassment, Lt. Bolan, who had escorted Petitioner to SHU on February 20, 2002, attempted to confiscate Petitioner's religious headwear, additionally provoking Chaplain Johnson to comply.  Petitioner filed grievance.  Chaplain Cozzens continued to deny Petitioner's religious practices, denoting the Jewish religion was not an

8

acceptable religion there at FCI Elkton.    Chaplain Cozzens
interferred with the religious meals to be received during the
fast of a religious holiday, all in retaliation for Petitioner
addressing issues stemming from the segregation housing unit,
possibly therewith Counselor Smith.

Petitioner's grievances have been circumvented as "untimely"
so as not to be recorded or for wahtever reasons posed by the
staff there at FCI Elkton.

Upon attending a team meeting, semi-annual, on or about
July 2, 2002, Petitioner was not adivsed thereof an incoming
transfer, only advised as to maintain programming, enroll in a
physical fitness class.    It is here where Unit Manager Milton
had deliberately authorized transfer referral for submission.

However, this submission was not merely at the behest of
Unit Manager Milton, this transfer seems to be in furtherance to
Petitioner's litigation, to frustrate, discourage, impede, and
hinder.    In addition, to the grievances being filed there at
FCI Elkton.

During the course of the detainment in SHU, petitioner
reviewed property stored, all seemed to be intact.    Upon
release, Petitioner's prayer book was missing.    Also, there
was no Segregation Review Officer noting Petitioner detainment
therewith a hearing.

On July 15, 2002, Petitioner was transferred to the
Oklahoma Transfer Center, where Petitioner remained til August
5th, 2002, arriving at the current facility, FCI Cumberland.

Upon being received, Counselor Sines advised Petitioner
to find a detail, Petitioner advised Ms. Sines he was not willing to

work nor program, entitled thereby Offender's Rights.    Ms. Sines
enforced this matter thereby implying policy states every inmate
healthy must work.    Petitioner addressed this matter to the
executive staff.

Subsequently, Petitioner was approved for job assignment
with the Education Department, Ms. Sines sought to circumvent this
approval by contacting the Education Supervisor, Ms. Clifton.
Petitioner was denied placement.    Thus, seeking approval on the
institution's labor poll/pool with Food Service.    Petitioner
advised Ms. Sines that placement in the law library would permit
Petitioner to file and complete litigation there before the courts.
Counselor Sines compelled Petitioner to find another detail.

Petitioner sought a legal idle that would permit allotted
time, freely, to research, prepare, and submit legal documents to
the court.    This matter was addressed in response by Unit Manager
Hart.    Stating proof of deadlines must be evident.

On or about August 20, 2002, soon after speaking with Ms.
Sines and Ms. Clifton, separately, as to denial of job assignment,
Petitioner was summoned to the Lieutenant's Office, where SIS
Officer Lichter advised Petitioner's photos were to be taken.

Upon completion of this photo take, Petitioner inquired as
to the reasons, Ms. Lichter apprised in short, that Petitioner
had compromised staff in previous institutions.    Petitioner
requested to know the extent of the photos purpose.    Ms. Lichter
informed Petitioner, that notification would come should need be.

Petitioner submits here that Counselor Sines has seemingly
contacted or been contacted by previous instition staff, notifying
Ms. Sines of some regards to Petitioner, denial of this detail

came soon after Petitioner placed the approved request in Ms. Sines hand.

To which, Petitioner notes this matter is being carryied over from incidents derived from Complaint and grievances thereafter. Retaliatorily to say the least, where violations of rights have incurred.

Petitioner notes here that the transfer to FCI Cumberland included Petitioner's custody level being increased from a low security to a medium security with no sound justification.   It has been apprised that a Greater Security Management Variable was placed on Petitioner's security level.   However, the requirements for this level increase is incorrect, Petitioner does not meet these requirements.   Should such be the case, Petitioner would not have transferred from FCI Allenwood, a medium, to a low secured facility, however, a transfer to an equivalent level would have ocurred.   This transfer was retaliatory and invalid with custody increase.

Petitioner prays the Honorable Court of Appeals permit the amending of Complaint with claims and defendants herewith.   Each of which are as follows:

| | | | |
|---|---|---|---|
| 1. | Captain (FNU) Moriani [sic] | 2. | Lt. Thomas Nesbitt |
| 3. | SIA (FNU) O'Dell | 4. | Officer (FNU) Miele |
| 5. | Unit Manager Michael Carroll (All FCI Fort Dix) | 6. | Warden Bailey |
| 7. | Assit. Warden (FNU) Montalvo | 8. | Warden Morrison |
| 9. | Counselor D. Smith | 10. | Captain Kryer |
| 11. | Lt. (FNU) McMcannis | 12. | CSW (FNU) Sweeney |
| 13. | Chaplain S. Cozzens | 14. | Chaplain G. Johnson |
| 15. | Mr. Ranum, CMS Supr. | 16. | Mr. Mellenger, CMS |
| 17. | Ms. Wiener, CMS | 18. | Mr. (FNU) Milton, UM |
| 19. | Mr. (FNU) Devivo | | |

(All FCI Elkton)

11

19.  Counselor Sines (FCI Cumberland) 20. Warden Bobby Shearin

Petitioner prays the Honorable Court of Appeals will permit Petitioner to further amend the Complaint in the event continuance deriving from the here mentioned oocurs.

## ARGUMENT

Jurisdiction is posited here pursuant to Rule 27 of the Federal Rules of Appellate Procedure.  **Bell v. Jarvis, 198 F.S. 3d 432, 444 (4th Cir. 1999),** allowing parties to file motions at a any time before the case is called for oral argument.  Herewith, Rule 15(d) to amend to the Complaint with claims and defendants.

Petitioner's inquiries to property seems to have opened a can of worms, commencing there at FCI Fort Dix, upon notifying Captain Moriani of this matter, thus, spilling over to subsequent prisons.  In which, Petitioner has not, to date, received the property itemized there at FCI Allenwood on April 12, 2000.

Petitioner seeks not to reiterate what has been framed in Appellant's Brief, redundance and repetitiveness is not necessary, clearly these actions are retaliatory, as Petitioner requested in judgment to prevent such actions.  Complaint, at 16(b).

In which, Rule 15(d) provides:

> "Federal Rules of Civil Procedure 15(a) instructs that leave to amend "shall be freely given when justice so requires.""

Hassoun v. Cimmino, 126 F.S. 2d 353, 360 (D.N.J. 2000).

Further provisions notes that events which have occurred ince the date of pleading may be addressed accordingly.

> "The Court may permit a party to file a supplemental complaint "setting forth

12

transaction or occurences or events which
have happened since the date of the pleading
sought to be supplemented.   Permission may
be granted even though the original pleading
is defective of a claim for relief or defense."

Ben Venue v. Laboratories v. Novartis Pharmaceuticals, 10 F.S.

2d 446, 452 (D.N.J. 1998); see also: Lake v. Arnold, 232 F. 3d

(3rd Cir. 2000); Urrutia v. Harrisburg County Police Dept., 91 F.

3d 451, 452 (3rd Cir. 1996).

## CONSTITUTIONAL AND STATUTORY VIOLATIONS

Upon transferring from FCI Allenwood on or about April 15,

2000, Petitioner did not receive  property itemized thereon or

about April 12th, 2000, upon being received there at FCI Fort

Dix on or about April 18, 2000.   In accord to Policy Statement

5580.06; 28 CFR § 553.14(a)(1).  Petitioner's Exhibits 8a-8c.

Detainment in Segregation Housing Unit without hearings;

review(s) there at FCI Fort Dix.   In accord to 28 U.S.C. § 541.22

(a):(b);(c); and (d).   Upon being detained in SHU thereon June

29, 2001, Petitioner's property was not afforded procedural

process in accord to P.S. 5580.06; 28 CFR § 553.10-.13   **P.E. 2**

Petitioner was determined to be on a hunger strike without

medical staff determination, this decision made by SIS Lt. Nesbitt

there at FCI Fort Dix.  In accord to Policy Statement 5562.04; P.S.

5562.04; 28 CFR § 549.60-.64.   This matter of Petitioner

refusing to aceept food trays derived from SHU Lt. Nesbitt

tampering with Petitioner's food trays, thus, fringing on Eighth

Amendment violations of cruel and unusual punishmnet.  **P.E. 9-11**

During the period June 29, 2001 til December 12 or 13, 2001,

Petitioner was not afforded to retain his legal or personal property

while detained in the Segregation Housing Unit there at FCI Fort Dix,

upon being received there at FCI Elkton on December 5, 2001, soon

after, summoned to retain property, Petitioner refused to sign

the property form itemizing property received from FCI Fort Dix,

Correctional Officer Walker noted that should Petitioner not sign

the form, the property would not be received but disposed.    28

CFR § 553.14.   **P.E. 12**

Upon detailing this matter of missing property thereto C.O.

Walker therein R & D (Recieving and Discharge), that certain

property was not Petitioner's, this matter was addressed to

Counselor Smith, in addition to missing property from FCI Allenwood

and there then, FCI Fort Dix.   Ms. Smith refused to resolve this

matter in accord to 1330.13; 28 CFR § 542.10-14; P.S. 5511.07:

Petitioner advised Counselor Smith; CMS Supervisor Ranum:

CMS Staff Mellenger and Weiner that harassment was unnecessary and

prejudicial.   Upon filing grievances to this matters, Ms. Smith

opted to circumvent these matters.   In which, Petitioner expressed

that the work assignment interferred with religious practices.

In accord to 1040.04; 28 CFR § 551.90; First Amendment Right to

Practice Religious Tenets Freely.; 28 CFR § 548.10-11.   **P.E. 15=44**

Upon receiving approval for job assignment that would permit

no interference with religious practices, Captain Kryer and Lt.

McCannis circumvented this approval therewith the assistance of

Counselor Divivo, the assignment counselor.   28 CFR § 551.90.

Chaplain Cozzens and Chaplain Johnson denied Petitioner to

practice religious tenets freely thereby actions noted (Pages 8-

9; Petitioner's Exhibits 54-68).   In accord to P.S. 5360.08; 28

CFR § 548.10-11.   **P.E. 45-49**

Unit Manager Milton, upon Petitioner being released from the Segregation Housing Unit on April 3, 2002 impeded, frustrated the filing of Petitioner's grievances.   In accord to P.S. 1330.13; 28 CFR § 542.10-14.. **P.E. 39-44**

During the period of February 20, 2002 til April 3, 2002, Petitioner was not afforded hearings or notice in accord to 28 CFR § 541.22(a-d).   This matter seemingly was circumvented due to Petitioner calling Assistant Warden Montalvo as a witness to reason(s) of Petitioner's detainment in SHU for disobeying a direct order.   A charge which was reduced and suspended for six months. **P.E. 2-5**

Petitioner was transferred on or about July 15, 2002 from FCI Elkton without justification being sound, a management variable thereto history of violence being the reason.   However, notice as to this transfer was not afforded to Petitioner that a custody increase would be taken place during the team meeting thereon or about July 2nd, 2002.   This transfer was clearly retaliatory for the grievances filed and incessant inquiries as to property lossed/misplaced therefrom Allenwood (FCI) and FCI Fort Dix.  **P.E. 69-72**

Counselor Sines, here at FCI Cumberland sought to deny Petitioner a job assignment due to false allegations at previous institutions, to which, Ms. Sines used this information to contact the Supervisor of Education to deny Petitioner assignement which was initially approved.  28 U.S.C. § 551.90. **P.E. 73-77**

Petitioner sought greivances relevant to issues arising here at FCI Cumberland, to which, a request for copy of grievance be returned to Petitioner.   Warden Shearin denied this request in

violation of procedural due process, to impede, frustrate, and
hinder filing of grievances to redress issues accordingly.  P.S.
1330.13; 28 CFR § 542.10-15;.17-.18  **Grievances currently being filed.**

   The above noted violations, per policy statements and Code
of Federal Regulations have interferred, constitutionally with
Petitoiner's rights afforded thereto the First, Fifth, and Eighth
Amendments of the United States Constitution.   These violations
relate back to the initial filing of the Complaint, to which,
prior to, Petitioner had not incurred any interventions by Bureau
of Prison Staff relevant to the matter mentioned therein the
Complaint and here with the held.

   Petitioner has inccurred further religious practices being
denied with Chaplain Maloney here at FCI Cumberland, to which,
Petitioner advised with documented card and thereon SENTRY that
Petitioner was approved for Certified Food Program, which the
Oklahoma Transfer Center recognized upon Petitioner being holdover
en route to FCI Cumberland.   Petitioner's permission to
participate in the Certified Food Program did not occur until
October 10, 2002, with Chaplain Maloney setting forth no efforts
to address and correct.   This matter has spilled over to religious
holy days not being cognizant by Chaplain Maloney.   To which,
Petitioner posits these actions derive from actions taken there
at FCI Elkton with the Chaplain Services, which it is plausible
Chaplain Maloney has received communication thereof by Ms. Sines
or staff there at FCI Cumberland.   P.S. 5360.08; 28 CFR § 548.10;
P.S. 4761.04; 547.20.   It is here that Petitioner respectfully
request that Chaplain Maloney here at FCI Cumberland is amended
to the Complaint pursuant to Rule 15.  **Grievances being filed.**

16

Plaintiff submits here in accord to access to the courts, violative thereof the First, Fifth, and Sixth Amendments guranteed by the United States Constitution, Warden of FCI Cumberland, Mr. Bobby J. Shearin, recently posted notice by Memo advising the inmate population that Pre-sentence Reports are no longer to be possessed, this prohibition is discriminatory, at the least, strongly infringes on rights aforementioned.    **P.E. 78-82**

Plaintiff request that a Preliminary injunction and/or Order is granted permitting/authorizing Plaintiff to possess his documents here mentioned.

Furthermore, as a matter of interst, the opposing counsel hereto purported Plaintiff could not show 'actual injury', albeit this matter as to access to the courts reeks of retaliatory actions by the defendants noted therein the Complaint.    However, Plaintiff submits here that the United States Chief Justice, Edward R. Korman, United States District Court, Eastern District of New York has recently Ordered the Assistant United States Attorney's Office to reply to Petitioner's (Plaintiff here) Rule 60(b) Motion within 30 days (November 15, 2002).    In which, the opposing counsel has requested for an extension of time, thus, granted by the Honorable Chief Justice.    **P.E. 83-84.**

In addition, the Honorable Court here rendered the matter thereof the Complaint to be appealed in bad faith, pursuant to 28 U.S.C. § 1915A, it is here that Plaintiff respectfully request that further considerations are taken hereto the decision/Order of Chief Justice Korman.    For it is this issue in relation to other issues which Plaintiff was addressing upon property being misplaced/lossed initially thereon or about August 1998 and again on April 15th, 2000.

17

Petitioner submits here that inferences herewith may be gleaned thereof constitutional claims for which relief may be favorable to moving party. <u>Neitzke v. Williams</u>, 460 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

## CONCLUSION

For the reasons set forth herewith, Petitioner prays the Honorable Court shall grant the Motion to Amend accordignly in the interest of justice, thereby adjudicating this matter. In addition that the Complaint has requested judgment relevant hereto (Complaint, pages 16-17(a-e). It is here that Petitioner prays the Honorable Court will grant a transfer back to FCI Fort Dix or in the alternative, FCI Otisville or FCI Fairton, thus permitting Petitioner's family, children, and grandchild, friends to visit without interferences in retaliation for filing the Complaint or the amended Motion hereof.

Respectfully submitted,

DATED: October 13, 2002
Cumberland, Maryland

Mark A. Garnes - Pro Se
Reg. No. 24646-053
P.O. Box 1000-A1
FCI Cumberland
Cumberland, Md.    21501

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Mark Garnes,                          :
        Petitioner,                 :
                                    :
        v.                          :          02-1910
                                    :
Janet Reno, et al.,                   :
        Respondent.                 :

...............................................................

## **AFFIDAVIT**

    I, Mark Garnes, Petitioner, Pro Se, hereby swear under penalty of perjuy and oath, deposes and says:

    1.   I was transferred from FCI Allenwood on or about April 13th, 2000, to USP Lewisburg, to which I was held in holdover status til April 18, 2000, where I was then transferred to FCI Fort Dix, in Fort Dix, New Jersey.

    2.   Upon receipt at FCI Fort Dix, I requested/inquired about property to be forward by FCI Allenwood, which had not been received at or by FCI Fort Dix's Receiving and Discharge Staff/Department.  These requests/inquiries were continuance, to no avail, from about April 25, 2000, thereafter on subsequent occasions and transfer to FCI Elkton.

    3.   On June 29th, 2001, I was detained in Administrative Segregation there at FCI Fort Dix for an investigation. Presumption, Leads me to believe this matter was concocted by Captain Mioriani [sic], due to consistent requests/inquiries regarding property.

4.   Upon transferring to FCI Elkton, I continued to
     inquire as to property yet received therefrom FCI
     ALLENWOOD.   These inquiries were addressed to
     Unit BB Counselor Deborah Smith; SIS Lieutenant's
     Office; and Assistant Warden of Operations, Mr.
     Montalvo.   No responses were afforded thereto
     these requests, in which, I was thereafter "labelled"
     a "pest and nuisance" by Counselor Smith.   Ms.
     noting that I should forget about the property.

5.   On February 20, 2002, I was placed in administrative
     segregation, pending disciplinary hearing for an
     infraction received therefrom Unit BB Case Manager
     Sweeney.   To which, the Disciplinary Hearing Officer
     dismissed two of the charged offenses, placing the
     third in suspension pending clear conduct for six
     months.   I explained these acts were concocted due
     to my continuous requests for property, harassment
     by staff, and retaliation for my litigation.   Where
     Assistant Warden Montalvo ordered my detainment.   To
     which I was released on April 3, 2002, resulting from
     Assistant Warden Montalvo not showing as witness to
     the matter.   I was given a Unit Change to Unit FB,
     this is presumed to deter me from pursuing issues
     relevant to property and grievances submitted or
     endeavored to be sumitted.

6.   Upon attending Unit Team Meeting thereon or about or
     about July 2nd, 2002, I was not advised of an
     impending transfer, only to maintain clear conduct
     and enroll in a fitness class.   Presumption here
     is due to my inquiries to property, grievances
     submitted, herewith litigation to be frustrated.

7.   On July 15, 2002, I was transferred to the Oklahoma
     Transfer Center in Oklahoma City, Oklahoma, til
     August 5, 2002, where I was transported to FCI

Cumberland.   In order for this transfer to occur,
my security level was increased without justification,
in accord to sound reasons.   I was increased based
on a Greater Security Management Variable, which was
not used to maintain my security level there at
FCI Allenwood, a medium secuirty facility as here
with FCI Cumberland.   This security level increase
was manufactured in retaliation for my filing
litigation, grievancs, inquiries to property.

8.   Here now, at FCI Cumberland, it seems obvious from
Counselor' Sines response on my grievance, indicates
Ms. SInes has contacted staff beyond the confines of
FCI Cumberland or staff has contacted her from another
facility.    To which, I placed an approved request
for detail assignment in the law library as a law
clerk, in Ms. Sines hands for computing and assignment.
Thereafter, Ms. Clifton, the Supervisor for the
Education Department, upon my inquiry, stated she did
not need me.   Upon further inquisition, Ms. Clifton
averred that she was contacted by Ms. Sines and that
I was not needed as a clerk.    Some days later, on
or about August 20, 2002, I was summoned to the
Lieutenant's Office, where SIS Officer, Ms. Lichter
advised my photos were to be taken, upon inquiring
as to why, Ms. Lichter advised I had compromised
staff in previouseinstitutions.

9.   I have verbally and written requests for legal idle
to conduct my litigation to the courts, this matter
has been denied without appropriate approval from
the courts, documented.   In addition, I have
requested to remain unassignedthis has been denied.
I submit, this will be the only way for me to complete
the volume of litigation currently before the various
courts pertaining to my civil action here, conviction
and sentence, with civil matters included other than
herewith.

10. While housed at FCI Fort Dix, I requested the assistance of the following staff regarding my property: ISM Staff, Mr. Prince, Ms. Adams; CMC Mr. Donahue; Counselor Luis Reyes, Counselor Steele (A&O Counselor); Counselor Smith; Captain Mioriani; Warden Bailey. It is Captain Mioriani whom I gave more attention towards this matter, due to Captain Mioriani being formerly staffed thereat FCI Allenwood.

11. This being the second incident relevant to my property seems to have ignited ill behavior to persuade me from inquire, it is Captain Mioriani with SIA O'Dell, who escorted me to the Segregation Housing Unit thereon June 29, 2001. It is Captain Mioriani who addressed the matter of refusal to take food trays thereafter the tampering and pebbles found and chewed by me while housed in SHU. Where upon receiveing an infraction for refusing an order, Lt. Nesbitt, the SHU Supervisor declared me on a food strike, this seemingly concocted to force me to eat the food trays thus refused. In which, Unit Manager Carroll sanctioned me to 30 days no commissary and 30 days no visits. Presumed to be intentional due to my opting to eat commissary purchased items and items therefrom the vending machines in the visiting room.

For the reasons set forth here, Petitioner prays the Honorable Court of Appeals consider these attestments upon reviewing the Appeal Brief, Motion pursuant to Rule 27, and the Motion for Preliminary Injuctions.

DATED: September 10th, 2002
Cumberland, Maryland

Mark A. Garnes - Pro Se
Reg. No. 24646-053
P.O. Box 1000-A1
FCI Cumberland
Cumberland, Maryland
                    21501

## CERTIFICATE OF SERVICE

I, Mark A. Garnes, Petitioner/Plaintiff, Pro Se, hereby swears under the penalty of perjury purusant to 28 U.S.C. § 1746, that Ihave forward to the Clerk of the Court four copies of Plaintiff's Motion Pursuant to Rule 15, with appended Affidavit and Petitioner's Exhibits.    With additional copy being forward to opposing party.    Petitioner submits here copies have not been included for named parties, thus, to be amended pursuant to Rule 5(c) of the Federal Rules of Civil Procedure.    Each of the aforementioned being forward to the following addresses, respectively:

MAILED TO:

Clerk of the Court
United States District Court
Middle District of Pennsylvania
P.O. Box 983
228 Walnut Street
Harrisburg, Pa.    17108

Kate L. Mershimer, AUSA
United States Distirct Court
Middle District of Pa.
Room 217, Fed. Bldg.
228 Walnut Street
Harrisburg, Pa.    17108


DATED: October 14th, 2002
Cumberland, Maryland

Mark A. Garnes - Pro Se
Reg. No. 24646-053
P.O. Box 1000-A1
FCI Cumberland
Cumberland, Md.    21501